## DRAPER *et al., vs.* BRYSON *et al.*

1. A *scire facias* to revive a judgment against an administrator, instead of having a sheriff's return of service upon it, had an acknowledgment signed by the administrator, that it was personally served upon him. A judgment by default was afterwards rendered against the administrator. *Held,* This judgment was not *void,* and cannot be objected to in a collateral proceeding.

2. A purchaser at a sheriff's sale under execution is not affected by any irregularity in the sheriff's proceedings in making the sale, unless he has participated in occasioning it, or there has been some departure from the requirements of the law, for some fraudulent purpose. Thus, if the sheriff should not give the notice of the sale required by law, it would not affect an innocent purchaser.

3. Under the act of 1817, a subsequent purchaser, who has not recorded his deed within three months from its date, cannot take advantage of the failure of a prior purchaser to record his deed within three months from its date. In such a case, the first purchaser, if his deed is first recorded, has the better title. The same would be the case under the act of 1821.

4. Under the act of 1817, a prior unrecorded deed will prevail over a deed to a subsequent purchaser who has notice of it.

### Error to Pike Circuit Court.

This was an action of ejectment, brought to recover possession of part of a lot in the town of Louisiana. To sustain their action the plaintiffs offered in evidence:

1. A patent for the fractional section on which the town was

located, bearing date October 1, 1819, to Samuel K. Caldwell and Joel Shaw, the original proprietors of the town tract.

2. Record of a judgment in favor Robert Wash v. John Shaw, administrator of Joel Shaw, deceased, entered in the Pike Circuit Court, August 11, 1823, and a sheriff's deed to Phineas Block, for the lot in controversy, under said judgment, conveying the interest of said Joel Shaw, and bearing date December 10, 1823. The suit of Wash was originally commenced against Samuel K. Caldwell, in his own right, and against Samuel K. Caldwell and Mary Shaw, administrator and administratrix of Joel Shaw. Both administrators were served with process and appeared and made defence to the action. During the pendency of the suit, Caldwell died, and Mary Shaw resigned her letters of administration, and a *scire facias* was issued against John Shaw, describing him as the administrator of Joel Shaw, to appear and defend the action, on which writ of *scire facias* appears the following endorsement: "The undersigned, administrator of the estate of Joel Shaw, unadministered, as within described, acknowledges a personal service of the within writ, May 5th, 1823. John Shaw, administrator."

At the ensuing term, (August, 1823,) a judgment by default was taken against said John Shaw, as administrator of Joel Shaw. The defendants objected to the introduction of the record as evidence, because the judgment was void, and to the deed of the sheriff to Block, for the reason that it does not recite the execution, and because, from the face of the deed, it appears that due notice of the sale was not given, and no evidence was offered *aliunde*, to show that such notice was given; but the court overruled these objections, and both the record of the judgment and the sheriff's deed were read in evidence. Block's deed was recorded December 11, 1823.

3. Plaintiffs also read in evidence the records of four several judgments against Samuel K. Caldwell, confessed before the clerk in vacation, in July and October, 1821, and a deed by the coroner of Pike county to Phineas Block, dated April

14, 1824, filed for record August 10, 1824, and acknowledged the same day, conveying the interest of said Caldwell to the said Block. The plaintiffs read in evidence a deed from Phineas Block to them for the north half of the lot in controversy, dated in June, 1847, proved possession by defendants, and that Joel Shaw died in August, 1819, and Samuel K. Caldwell in January, 1822.

At the close of the plaintiffs' case, defendants asked the court to instruct the jury that, inasmuch as the plaintiffs had not given any evidence to prove that they, or Block, under whom they claim, had made an actual entry upon the lot in question, nor been in actual possession, within twenty years next before the commencement of this suit, the verdict ought to be for defendants. The two instructions embodying the above doctrine were refused by the court, they not being considered as having any applicability, unless there was an adverse possession proved.

Defendants then read in evidence an agreement between Shaw and Caldwell, setting out that they had purchased the preëmption right to the Louisiana town tract, and agreeing to lay out a town, and sell the lots. This agreement bears date July 7, 1817.

2. A power of attorney from the heirs of Joel Shaw to Samuel K. Caldwell, authorizing him to convey and make deeds for the lots contracted to be conveyed by Shaw, in his life time, and Caldwell, dated April 25, 1820.

3. A deed from Caldwell and the heirs of Shaw, by their attorney, to John Bryson, for the lot in controversy, bearing date May 14, 1821, acknowledged July 16, 1821, and filed for record August 3, 1824, under which deed the defendants claim.

The defendants also proved, for the purpose of showing notice to Phineas Block of the existence of the deed from Caldwell and the heirs of Shaw, that, at the time of the sale of Shaw's interest under execution, the officer who made the sale knew that lot 91 was John Bryson's lot; that he never saw the

deed to Bryson, but it was generally understood to be Bryson's lot; that Block came to Louisiana in the fall of 1821, as the witness thought, and had a store in the house on the lot adjoining, and was doing business there at the time of his purchase, and until after the sale of Caldwell's interest in the lot to him, witness had no recollection that any one claimed the lot at either sale.

John E. Allen, another witness, proved that he first purchased this lot, and afterwards transferred it to John Bryson ; that most of the people at the sheriff's sale and coroner's sale were acquainted with the titles to the lots sold ; that there were but few persons in Louisiana in 1823 ; that lot 91 was worth about seventy dollars in 1823. Witness had no knowledge that Block knew any thing of Bryson's having a deed for the lot.

It was also proved that Block had said, after the sale to Draper, that he had got Draper into a difficulty, which difficulty was a law suit; that he and B. Benbridge had purchased this lot at sheriff's sale ; that after his purchase, he had offered to convey his title to the heirs of John Bryson, on their payment to him of the sum of money he had paid out, amounting to between three and five dollars ; that the heirs had refused to buy, and that he (Block) had the best title to the lot, and he had sold to Draper.

The plaintiffs objected to Block's statements going in evidence, on the ground that he was a competent witness in the case, and his statements, therefore, hearsay, which objection was overruled by the court.

There was other evidence going to show that Block knew of the existence of the Bryson deed, immediately or soon after his purchase, but no direct testimony that he had any knowledge of such deed, at the time of his purchase at sheriff's sale. There was abundant evidence that Draper knew all about the state of the title, at the time he received his deed from Block. There was also an attempt to prove adverse possession in the defendants, but the evidence clearly disproved this defence.

The plaintiffs asked the court to instruct the jury :

1. That, if they find that the deed of the sheriff to Block was filed for record on the 11th of December, 1823, and the deed from the coroner to Block was filed for record on the 10th of August, 1824, and each within three months from their acknowledgment, and that the deed to John Bryson was executed May 14, 1821, and not recorded until August 3, 1824, the said deed of Bryson is void as against the deeds to Block.

2. That it is immaterial whether Block had notice that the deed of Bryson was in existence, or that he owned lot 91, the construction of the recording acts being that, if Bryson failed to record his deed within three months from its execution, the deed has no validity against a subsequent grantee, who had his deed recorded, or filed for record, within three months after its acknowledgment.

3. Unless the jury find that Block had notice of the existence of the deed from Shaw and Caldwell to John Bryson, at the time he purchased the said right of Shaw and Caldwell, such deed is void as to said Block and those claiming under him.

4. No declarations or statements of Block, after he had parted with his title to Draper, can affect the title of the plaintiffs.

All of which were given by the court except the second.

The defendants prayed the court to give the following :

3. That the judgment in favor of Robert Wash against John Shaw, administrator of Joel Shaw, is void, the court not having obtained jurisdiction over him, at the time it was rendered, and that the sheriff's deed under said judgment ought to be excluded from their consideration in rendering their verdict.

4. That the above deed of the sheriff to P. Block should be rejected, on the grounds that it appears from the deed itself, and the notice of sale appended to the deed, that the execution was levied, and notice given on the 27th of November, and the sale had on the 9th of December, 1823, and no other evidence was given to show that the twenty days' notice was given, as required by law.

5. That, unless the jury believe from the evidence that

Phineas Block, under whom Draper claims, made an actual entry upon the lot of ground in question, within twenty years next after the execution and delivery of the sheriff's and coroner's deeds to him, in this case, they ought to find for the defendants.

6. That, unless the jury believe from the evidence that the plaintiffs or Phineas Block, under whom the plaintiffs claim, made an actual entry upon the lot of ground in question, within twenty years next before the commencement of the suit, they ought to find for defendants.

7. That, if they believe from the evidence, that the defendants and John Bryson and heirs, under whom the defendants claim title, have had a continued and uninterrupted possession of the lot of ground in question for twenty years next preceding the commencement of this suit, they ought to find for the defendants.

8. That, if they believe from the evidence, that Phineas Block, under whom Draper claims, had, at or before the sales of the sheriff and coroner, notice of the sale of the lot in question by Caldwell and others to John Bryson, and also that Draper, at the time he bought of Block, had notice of the same, and that the defendants claimed under the heirs of said John Bryson, they ought to find for the defendants.

9. That, if they believe from the evidence that the deed from Caldwell and others to John Bryson, was acknowledged and recorded on the 3d of August, 1824, and that the coroner's deed to P. Block was not executed, acknowledged or recorded till the 10th day of August, 1824, the Caldwell deed is a better title to the lot in question than the coroner's deed, and that they ought to find for the defendants as to that.

10. A purchaser at sheriff's sale is not a purchaser within the provisions of the act of 1817, requiring deeds to be recorded within three months, nor within the provisions of the act of December 6, 1821.

Of the instructions prayed by defendants the court gave the 3d, 7th and 8th, and refused the others, and each party except-

ed to the giving and refusing of instructions. The court found a verdict for the plaintiff, as to the undivided half of the north half of the lot in controversy. Both plaintiffs and defendants moved for a new trial, assigning for reason the giving of erroneous instructions, refusing proper instructions, that the verdict was against law, and that illegal evidence had been admitted, and each party tendered his bill of exceptions to the overruling of their respective motions for a new trial, and have brought the case to this court by writ of error.

There was no evidence showing that John Shaw was administrator of Joel Shaw, deceased, save what was contained in the record and proceedings of the judgment in favor of Robert Wash aforesaid.

*A. H. Buckner*, for Draper and others. Two causes of error are relied upon to reverse the judgment below.

1. The refusal to give the second instruction asked by the plaintiffs. 2. The giving of instruction numbered three, asked by defendants, which excluded from the jury the sheriff's deed to Block.

I. As to the first, it is only material in the event of a new trial. There is no evidence of notice to Block, and the finding of the court negatives the fact of such notice. But it is insisted that the act of February, 1817, and the supplementary act of December 6, 1821, make the priority of record within the given period the sole test of priority of right, without reference to the question of notice. The act of 1817 makes the unrecorded deed void against subsequent purchasers "*so recording*" their deeds within the time prescribed, and the same act makes the record notice. If it was intended that any thing else than the record should be notice, it is singular that it is not so expressed in the act. The act of 1821 (1 Terr. Laws, 798,) seems to exclude the doctrine of notice altogether. It says, in substance, no deed not recorded within three months from its execution, shall be valid, "except between the parties thereto and their heirs." *Expressio unius exclusio alterius.*

The act of 1825 is the first intimation of the intention of the legislature to make any thing else than the record notice.

II. The judgment of Wash against Shaw, administrator, was not void, but only voidable, and at most, could only be taken advantage of in a direct proceeding, and not collaterally. The court in which it was rendered was a court of general jurisdiction, and every intendment is made in favor of its jurisdiction. *Peacock* v. *Bell*, 1 Saund. 74. 7 Bacon's Ab. 170, tit. Void and Voidable. 2 Salk. 674. *Hart* v. *Seixas*, 21 Wend. 40. *Walbridge* v. *Hall*, 3 Vt. Rep. 114. *Grignon's lessee* v. *Astor*, 2 Howard. The act in force at that time (1 Terr. Laws, 110) requires that the administrator shall be duly served with a *scire facias*, and if he " neglect or refuse to become a party to the suit, the court may render judgment against the estate of the deceased." The court must have passed upon the question of notice to the administrator, and if so, its judgment cannot be inquired into in this proceeding.

The same principles apply to the question of notice of the sale by the sheriff. Even if there had been no notice, it could only have been taken advantage of in a direct proceeding between the parties. But the deed shows that the sheriff gave the twenty days' notice, and although the time between the date of the advertisement and the day of sale is not twenty days, it can well be presumed that the date of the advertisement is erroneously stated.

*Broadhead, Glover & Campbell*, for Bryson and others.

1. The judgment against John Shaw, administrator of Joel Shaw, deceased, is void for want of jurisdiction of his person. 2. There was no evidence adduced to show that John Shaw was the administrator of Joel Shaw, deceased, without which there could be no legal recovery. Had the pretended judgment been against the heirs of Joel Shaw, the plaintiffs would have been compelled to identify them as such. 12 Mo. Rep. 156. This is precisely the same as when an act has been done by an agent, in which case the agency must be established. A record is conclusive on the parties to it, but never proves that they pos-

sess the rights, or sustain the relations stated in the record. This must always be proved *aliunde*. The mere suggestion by the plaintiffs of the surrender of Mary Shaw's letters could not prove the fact to be so. 3. The coroner's deed, dated December 10, 1823, was void for want of a due advertisement of the sale. In a case where the purchaser is *without notice* of such a fraudulent dereliction of duty on the part of the officer, he would be protected by the presumption that the proper preliminary steps were taken ; but here the fact is brought home to him by the recitals of the deed. 4. As to Caldwell's interest, the deed of Caldwell and Shaw's heirs, dated May 14, 1821, to John Bryson, acknowledged July 16, 1821, and recorded August 3, 1824, ought to prevail over the coroner's deed, dated and acknowledged April 14, 1824, and recorded August 10, 1824. The act of February 1, 1817, which declares any conveyance, not recorded within three months from its date, void as against a subsequent purchaser *so recording* his deed, does not reach this case, because the subsequent deed was *not so recorded*. The older conveyance was, therefore, the better title. 5. A vendee at a sheriff's or coroner's sale is not a purchaser within the meaning of the recording acts. *Davis* v. *Ownsby*, 14 Mo. Rep. 170. 6. The evidence shows that Block had notice of the previous conveyance to Bryson. 7. As against the grantee in the prior unrecorded deed, Block ought to have proved the payment of the purchase money, independent of the recitals in the deed. There was no proof that he was a *bona fide* purchaser.

GAMBLE, Judge, delivered the opinion of the court.

In this case, the plaintiffs below (Drapers) rely upon two titles for undivided portions of the premises for which this action of ejectment was brought. Shaw and Caldwell were originally joint owners of the lot, and the plaintiffs claim through Block, who, it is alleged, obtained the title of Shaw by a purchase at sheriff's sale in December, 1823, and the title of Cald-

well by a purchase at coroner's sale in April, 1824. It is seen by the statement, that the defendants, Bryson and others, claim under a deed made by Caldwell for himself, and as attorney for the heirs of Shaw, on the 14th of May, 1821, acknowledged July 16th of that year, but not recorded until the 3d of August, 1824. The sheriff's deed to Block for Shaw's interest, is dated December 10, 1823, and is acknowledged and recorded on the next day. The coroner's deed to Block for Caldwell's interest, is dated May 14th, 1824, and is acknowledged and recorded on the 10th of August following. These two last deeds were executed between the date of the deed to Bryson, in 1821, and its record on the 3d of August, 1824, but the coroner's deed to Block was recorded August 10th, being seven days after the record of Bryson's deed. It will be seen by referring to the instruction given by the court, on the request of the defendant, (which is called the third instruction, although it is the first in the series asked,) that the title claimed by the plaintiffs under the sheriff's deed for Shaw's interest, was excluded from consideration, as the court declared that the judgment and sheriff's sale were void, because the court had not obtained jurisdiction over Shaw's administrator when the judgment was rendered. It will be further seen, by referring to the first instruction given at the request of the plaintiffs, that the deed to Bryson, dated in May, 1821, and not recorded till August, 1824, is declared void against the sheriff's and coroner's deeds to Block, although the coroner's deed is dated in April, 1824, and not recorded until August 10th, afterwards. The instruction given for the defendants, numbered as the 8th, gives full effect to the unrecorded deed to Bryson against both of Block's deeds, if Block, at the time of his several purchases, had notice that the lot had been sold to Bryson. The court found for the plaintiffs for an undivided half of the premises. This finding, under the law declared by the court, must have been for the title conveyed to Block by the coroner's deed for Caldwell's interest, as the sheriff's deed for Shaw's interest was declared inoperative, and it must fur-

ther have negatived all notice to Block of Bryson's title at the time of this coroner's sale.

As both parties have taken exceptions and writs of error, the questions decided against each, so far as they are material to the settlement of the controversy, will be considered.

1. The exclusion of the sheriff's deed for Shaw's title will be examined first. The objection sustained by the court was, that the judgment against John Shaw, administrator of Joel Shaw, was void, because the *scire facias*, which issued to revive the suit against the administrator, John Shaw, instead of having a sheriff's return of service upon it, had an acknowledgment, signed by the administrator, that it was personally served upon him, and the court afterwards rendered a judgment by default. This is the force of the objection, as sustained in the instruction given for the defendants; for the exclusion of the sheriff's deed was put upon the ground, that the court had not obtained jurisdiction over the administrator when the judgment was rendered. It is apparent that the court that rendered the judgment against Shaw's administrator, acted upon the acknowledgment of service by the administrator, as equivalent to a return by the sheriff, and was, no doubt, satisfied, that the administrator had signed the acknowledgment, although the entry of the judgment by default does not show that fact. I do not find any statute prescribing the mode of serving a *scire facias* to revive a suit against an administrator *de bonis non*, at the time this writ was issued. The act of 1807, in its 11th section, (1 Terr. Laws, 110,) provides for a *scire facias* to bring in the administrator of the original defendant, who may have died pending the action, and it declares, that, if the administrator, being *duly served* with a *scire facias* from the office of the clerk, twenty days beforehand, shall neglect to become a party to the suit, the court may render judgment against the estate of the deceased. By the English law, the sheriff would return on the *scire facias* either "that he had given notice to the defendants," or "that they have

nothing by which he can make known to them." Tidd's Practice, 1038.

In the present case, there is no actual return under the hand of the sheriff. In *Norwood* v. *Riddle*, 1 Ala. Rep. 195, error was prosecuted to reverse a judgment by default, where there was no return by the sheriff, but where there was an endorsement upon the writ, signed by the defendant, in these words : "I acknowledge the service of the within writ." The entry of the judgment states the appearance of the plaintiff by his attorney, and proceeds thus, "and upon the affidavit of Moses Jones to the hand writing of the signature of Henry Norwood, to the acknowledgment of the service of the writ upon him, and on motion of the plaintiff by his attorney, and the defendant, being solemnly called, came not but made default," &c. The Chief Justice says : "The endorsement upon the process, purporting to be an acknowledgment of the service upon Norwood, is certainly not sufficient proof of that fact ; but when it is shown, that the acknowledgment is subscribed with the name of Norwood, in his own hand writing, the evidence is satisfactory to show that the act was his own." It is to be observed that this was a case where the party was seeking directly to reverse the judgment, and not one in which the judgment was simply used in evidence ; and there the acknowledgment of service, when shown to be made by the defendant, was held equivalent to a sheriff's return of service, and authorized a judgment by default. If the record had been used in another collateral action, and there had been no entry that the signature of the defendant to the acknowledgment of service had been proved, the court in which it was thus offered as evidence, would have been bound to intend that it had been proved ; or rather, would have been bound to disregard the objection, because it was an objection only available in a proceeding to set aside or reverse the judgment. It was decided in this court, as early as 1823, in *Cabeen* v. *Douglass*, 1 Mo. Rep. 336, that a sheriff's return to the original process

forms a part of the record, and that error may be assigned in it; which accords with *Norwood* v. *Riddle*, from Alabama. Now it is apparent that the objection made in this case to the judgment rendered against Shaw's administrator, is within the same principle, and might be enforced in the same mode, that is, by writ of error. It cannot, at this time, be necessary to cite and comment upon the authorities in which the doctrine is maintained, that a purchaser at sheriff's sale, is not affected by any error or irregularity in the judgment or other proceedings which resulted in the sale, unless they are of a character that rendered the whole proceeding a nullity. The objection now taken to the judgment against Shaw's administrator, that the defendant acknowledged the service of the *scire facias* by an endorsement on the writ, instead of that fact being returned by the sheriff, is not supposed to affect the validity of the judgment when used in this case.

2. Another objection is taken to this sheriff's deed, which is, that it appears that the property was levied on and advertised on the 27th November, and was sold on the 9th of December, and that consequently the notice required to be given by the sheriff had not been given. In the sheriff's deed it is stated that twenty days' notice of the time and place of sale had been given by six hand bills affixed in the most public places in the county of Pike. It is true that a notice of the sheriff's sale which is appended to the deed, is dated at the bottom "Nov. 27th, 1823," and in his deed the sheriff states, that under the execution, he levied upon the property on the 27th November, 1823. So far as the question is affected by the date of the advertisement, there is no difficulty in reconciling that with the statement in the deed, that twenty days' notice of the sale was given, for it would be an entirely legal notice, and a discharge of the duty enjoined by the statute, if the paper called the notice had been set up for twenty days at the proper places, although it was dated on the 27th November, or had any other date, or no date at all. The statement in the deed that the sheriff had levied upon the property on the 27th November, is

not the statement of a fact inconsistent with the statement that twenty days' notice of the sale had been given. There was no act required or authorized by law, to be done by the sheriff, which amounted to a levy, as that word is understood when applied to the service of personal property. He could not take possession, or in any manner interfere with the possession of the property. The word levy, as used in deeds made by sheriffs for real estate, has no significance, and when used, the date of it is commonly copied from the advertisements put up in the county or printed in the newspaper. The statute which required the sheriff to make a deed to the purchaser, prescribed its recitals, and directed that it should " recite the execution, purchase and consideration." Geyer's Digest, 267, section 66. If it be said, the recital of the fact that notice of the sale was given, was not required by this act, and is, therefore, no more evidence of that fact than the recital of the time of levy is evidence of the commencement of the sheriff's proceedings under the execution, it may be answered, that the sheriff was, by law, required to give notice, and he was not required by law to do any act prior to the notice, nor was he required to do any other act than give notice prior to the sale. If, therefore, the levy mentioned in the deed means the giving of notice on the 27th November, then this statement would conflict with the sheriff's recital in the deed that he had given twenty days' notice of the sale, and between these two recitals, thus conflicting, we would give effect to that which alleged the performance of a duty required of the sheriff before the sale. But it is a more useful answer to this and similar objections to such sales, that the purchaser is not affected by any irregularity in the sheriff's proceedings in making sale under an execution, unless he has participated in occasioning it, or there has been some departure from the requirements of the law for some fraudulent purpose. The doctrine which has been maintained in the courts of Kentucky, upon this point, is sustained by reason, and is of the utmost value in a country where real estate is subject to sale on execution. It has been there decided, that the

omission of the sheriff to advertise the sale of land, as required by law, does not vitiate the sale to a fair purchaser. *Webber & Stith* v. *Cox*, 6 Monroe, 110. Judge Owsley, in giving the opinion of the court, says: " It would indeed be out of the power of all those who might be disposed to buy at such sales, to ascertain and know whether or not the officer by whom the property is exposed to sale, has, in every respect, complied with the provisions of the law, and if every failure on his part to do so was allowed to affect the sale, but few would venture to become purchasers at such sales, and the interests of both creditor and debtor would be greatly prejudiced." The same doctrine is declared in an opinion by Chief Justice Boyle, in *Lawrence* v. *Speed*, 2 Bibb, 401. The sheriff is held liable to the defendant in the execution, for any damages resulting from his omission, and if there is any fraudulent omission of which the purchaser has notice, the sale will be held void. This seems to have been the doctrine settled in that state, as well as in others, and commends itself to our reason, as necessary to the interest of all parties concerned in such sales, as well debtors as creditors. The view taken of this branch of the plaintiffs' title, in the court below, was erroneous, as the sheriff's deed was excluded from consideration by an instruction given for the defendants.

3. The Circuit Court sustained the other part of the plaintiffs' title, which was set up under the coroner's deed made to Block, and in sustaining this part of the title, there was an error committed in favor of the plaintiffs and against the defendants. At the time of the coroner's sale to Block, the deed to Bryson was not recorded, nor was it, at the date of the coroner's deed, which is dated April 14, 1824. But the deed to Block was not recorded until August 10th, more than three months after its date, and seven days after the deed to Bryson was recorded.

Now, if the effect of these deeds is to be determined by the act of 1817, that to Bryson will be the better title. Under the second section of that act, (1 Terr. Laws, 543,) the deed to

Bryson, not being recorded within three months *from its date*, was declared to be void as against subsequent purchasers so recording their deeds within the time prescribed by that section, that is, within three months from their date. Block's deed being dated on the 14th of April and not recorded until the 10th of August, was not recorded within three months from its date, so that the grantee in it is not in a condition to dispute the deed to Bryson, on account of its not being recorded in time. If it be said it was not acknowledged until August and was immediately recorded, the answer is ready and effectual, the statute fixes the date of the deed as the commencement of the three months within which it is to be recorded. It appears, on examining the certificate of acknowledgment, that the clerk certifies that the deed, on the day on which it was acknowledged, was signed and sealed by the sheriff in open court, but this is a fact which the law has not entrusted him to certify, and his certificate to that fact is of no value.

If the act of 1821 were applicable to the case, it would as decidedly give the preference to Bryson's deed ; for, under it, the deed to Block would not have any effect, as against Bryson, until it was filed for record, and before that event Bryson's deed was recorded. But it is not thought that the act of 1821 applies to the case, for reasons not necessary now to be stated, and this part of the title is disposed of under the act of 1817. The instructions given by the court which declared Bryson's deed void, as against the coroner's deed to Block, were erroneous.

The case, as now presented upon the record, requires that there should be another trial for the purpose of determining whether the title under the sheriff's deed to Block shall prevail against Bryson's deed. The Circuit Court, after deciding that the defects in the proceedings against Shaw's administrator, render the sale and deed a mere nullity, proceeded upon the coroner's deed, and found for the plaintiffs for the part conveyed by it. As this latter deed is held by this court to be inoperative upon the case presented in this record, because not

recorded in the time required by the act then in force, the chief object of another trial will be to determine whether Block had notice of Bryson's title, when he purchased at the sheriff's sale. Upon this point, the evidence in the record is very strong, but it is a question of fact to be determined by a jury.

4. Although the question, whether an unrecorded deed, which was made subject to the act of 1817, will prevail in a court of law over the title of a purchaser with notice of such deed, is not one of very general importance at this time, yet it arises in this case, and may as well be decided.

In England, as late as the case of *Doe* v. *Allsop*, 5 B. & Ald. 442, it has been considered as a new question, under the Stat. 7 Ann, c. 20, whether a court of law could sustain an unregistered deed against a subsequent purchaser, on the ground of notice. In *Jackson* v. *Burgott*, 10 John. R. 458, the question is discussed by Chief Justice Kent, and the opinion expressed that the subsequent purchaser, taking his conveyance with notice of the prior unregistered deed, is guilty of a fraud, and that a court of law, as well as a court of equity, can grant relief against a deed thus fraudulently made, and that notice is equivalent to the registry. A subsequent statute in that state introduced the words "bona fide purchaser," which, of course, rendered notice as effectual as registry. The decisions in different states differ upon this question, but it is both most just and most reasonable, to give effect to the notice of an unrecorded deed in a court of law, as well as a court of equity. Let the judgment be reversed, the other Judges concurring.