DRAPER *et al.*, Respondents, v. BRYSON *et al.*, Appellants.*

1. A purchaser at a sheriff's sale is a purchaser within the meaning of the recording acts.
2. Under the act of February 1, 1817, (1 Terr. Laws, p. 543,) a purchaser at a sheriff's sale, who took with notice of a prior unrecorded deed, was postponed to the prior purchaser.
3. Draper v. Bryson, 17 Mo. 71, affirmed.

### Appeal from Pike Circuit Court.

This was an action of ejectment instituted August 18, 1848. The facts of the case are fully set forth in the report of the case as heretofore decided by the Supreme Court.

RICHARDSON, Judge, having been of counsel, did not sit at the hearing of this cause.

(See 17 Mo. 71.) Plaintiffs assert title in their declaration to the north half of lot 91 in the town of Louisiana. Plaintiffs (as also the defendants) claim title through Joel Shaw and Samuel K. Caldwell, who were jointly interested in the lot as the original proprietors of the town of Louisiana. Plaintiffs assert title to Shaw's interest by virtue of a sheriff's deed, dated December 10, 1823, recorded December 11, 1823, to one Phineas Block. The sheriff's sale was had by virtue of an execution under a judgment against Shaw's administrator. Plaintiffs asserted title to Caldwell's interest by virtue of a deed from the coroner of Pike county to Phineas Block, dated April 14, 1824, recorded August 10, 1824. [The Supreme Court held the title, under which defendants claim, to be superior to that obtained by plaintiffs through this deed. See 17 Mo. 71.] Phineas Block conveyed the land in controversy to plaintiffs by deed dated June, 1847.

The defendants claim title under a deed from Caldwell and the heirs of Shaw to John Bryson, bearing date May 14, 1821; acknowledged July 16, 1821; recorded August 3, 1829. Defendants introduced evidence showing that one John E. Allen purchased the lot in controversy from Shaw and Caldwell, and paid the purchase money; that Shaw died before a deed was made; that Allen afterwards exchanged lots with Bryson, and that Caldwell and the heirs of Shaw made a conveyance to Bryson in 1821.

Evidence was adduced by plaintiffs and defendants bearing upon the question whether Block, at the time of the sheriff's sale to him, had notice of the deed of Caldwell and the heirs of Shaw to Bryson.

The court, at the instance of plaintiffs, gave the following instruction: "Unless the jury believe from the evidence in the cause that Block had notice of the existence of the deed from Shaw and Caldwell to John Bryson at or before his purchase at the sheriff's sale, they should find a verdict for the plaintiffs for the undivided half of the lot in question."

This was the only instruction given to the jury. The following instructions, asked by defendants, were refused by the

8—VOL. XXVI.

court: " 1. If the jury believe from the evidence that Shaw and Caldwell, in the lifetime of Shaw, sold the lot No. 91 in question to John E. Allen and received full pay therefor, then Shaw had not at his death any interest in said lot that could be sold under a judgment and execution against the administrator of Shaw obtained after the death of said Shaw. 2. If they believe that Caldwell and Shaw in their lifetime sold the lot in question to John E. Allen and received pay therefor ; that Shaw soon after died intestate ; that the patent issued to Shaw and Caldwell in October, 1819, for a tract of land including said lot, then the title immediately vested in said Allen, or remained in Caldwell and the heirs of Shaw as trustees for said Allen and his assigns, and no interest at any time vested in the administrator of Shaw that could be sold under a judgment and execution against the said administrator. 5. The judgment in favor of Robert Walsh against John Shaw as administrator of Joel Shaw, read by plaintiffs in evidence, gave no lien on the lot in question ; and a purchaser under an execution thereon receives only such an interest as the administrator could at that time convey. 6. At the death of Joel Shaw, whatever interest he may have had in the lot in question vested in his heirs and not in his administrator ; and if the heirs by their attorney in fact conveyed the lot in question to John Bryson before the rendition of said judgment, Block acquired no title to the lot at the purchase under an execution on said judgment, or by the sheriff's deed read in evidence."

The jury found a verdict in favor of plaintiffs for an undivided half of the north half of lot No. 91.

*Broadhead*, for appellants.

I. The instruction given to the jury was erroneous. It left the jury nothing to try but the question of notice. They were not at liberty to inquire whether the deed to Bryson was recorded within three months from its execution, nor whether Block had his deed recorded within three months. Unless it was so recorded plaintiffs are not in a situation to dispute the deed to Bryson.

II. The title of Shaw having virtually passed from him to Bryson—by the sale to Allen and by the deed of his heirs conveying the legal title—long before the rendition of the judgment against the administrator, there was no interest in Shaw or his representatives which they might lawfully convey, and therefore nothing upon which the judgment and execution could operate. (See Geyer's Digest, p. 217, sec. 66; Davis v. Ormsby, 14 Mo. 170; Scott v. Whitehill, 1 Mo. 549.)

NAPTON, Judge, delivered the opinion of the court.

This case presents virtually the same question determined by the court when this case was here in 1852, a full report of which may be found in 17 Mo. 71. The case was remanded for a trial of the comparative value of the title under the sheriff's deed to Block, recorded December 11, 1823, and that derived from the deed to Bryson which was recorded August 3, 1824. This court then held, if Block purchased at the sheriff's sale with notice of Bryson's title, he was not within the protection of the act of 1817; but as his deed from the sheriff was recorded on the day succeeding its execution, and of course was recorded in time under the act of 1817, his title was the better title, if the purchaser was without actual notice of Bryson's deed. The case was tried upon this point and the jury found there was no notice.

It is now contended, and was urged by instructions offered in the court below, that, as Shaw had no title when he died but had passed it to Allen, there was no title in his heirs or administrator upon which the judgment obtained against his administrator could operate, and consequently that the sale passed nothing to the purchaser. But to say nothing of the fact that Shaw had not executed any conveyance in his lifetime, and consequently that the legal title descended to his heirs subject to the payment of his debts, a judgment and execution operate to convey the same interest which the judgment debtor could himself convey by deed. A purchaser

at a sheriff's sale under an execution and judgment is a pur-
chaser within the meaning of the recording acts ; and it might
as well be said that if a grantor conveys to one to-day, he has
no interest, and can therefore convey no interest to another
the next day.   Yet if he does so, and the second purchaser
puts his deed on record first, without any knowledge of the
first conveyance, he holds the title.   The cases of Jackson v.
Town, 4 Cow. 597, and Jackson v. Post, 9 Cow. 120, have
been reviewed, and, so far as this point is concerned, over-
ruled by the same court.   (Jackson v. Chamberlain, 8 Wend.
624 ; Jackson v. Post, 15 Wend. 588.)   Such is also the
principle maintained in Pennsylvania in the case of Lessee of
Heister v. Fortner, 2 Binn. 40.   The Pennsylvania statute
differed from our act of 1817 in limiting the recording act to
mortgages or deeds defeasible.   The act of 1817 declared
that all deeds, conveyances, bonds, &c., should be recorded
within three months or be void against subsequent purchas-
ers.   Although a judgment creditor is not a purchaser within
the act, a purchaser at the execution sale is.   The judgment
is affirmed.