A. W. MAUPIN AND R. A. KING, Plaintiffs in Error, v. R. J. EMMONS AND EMELINE EMMONS, Defendants in Error.

1. *Conveyances — Record — Consideration — Notice.*—As against the first grantee of an unrecorded deed of land, a record of his own conveyance by a subsequent purchaser from the first grantor will avail nothing, provided he purchase with notice of the original unrecorded conveyance, or his purchase is not made on payment of a good and valuable consideration.

The actual notice required by the statute is used in contradistinction to the constructive notice given by a record. It does not mean that there must necessarily be direct and positive evidence that the subsequent purchaser actually knew of the existence of the deed. Any proper evidence tending to show it — facts and circumstances coming to his knowledge that would put a man of ordinary circumspection on his inquiry — should go to the jury as evidence of such notice. Proof of actual knowledge of the existence of the former deed has never been held to be necessary, but the jury have the right to infer such knowledge from facts that would naturally suggest it, and from which the actual relation of the prior purchaser to the land might be reasonably inferred.

2. *Executions, additional authorization in — Venditioni exponas— Act March 3, 1863.*—Where an execution in the form of an ordinary *venditioni exponas* was issued, reciting former levies and ordering the sale of what had been levied on, but leaving out entirely the command to levy on additional property,

as required by the act of March 3, 1863 (Sess. Acts 1863, p. 20, § 1), sale thereunder of additional property not before levied on would convey no title. The omission in the execution of the authorization to make additional levies would, in such case, not be held to be a clerical mistake, but a neglect by the party in interest to sue out the double writ to which he was entitled.

*Error to First District Court.*

*Ewing & Smith*, for plaintiffs in error.

*Lay & Belch*, for defendants in error.

BLISS, Judge, delivered the opinion of the court.

The plaintiffs brought their action for the possession of 320 acres of land owned and occupied by defendants, and relied upon a sale and purchase by them upon execution against one Hammack, the grantor of defendant Emeline Emmons. The execution sale was on the 20th of April, 1864, and the sheriff's deed was made on the 20th of September following, and placed on record the 29th. Hammack, the execution debtor, had sold the property and conveyed the same to Emeline Emmons, wife of the other defendant, on the 16th of November, 1858, and received a full consideration therefor. But the purchasers failed to put their deed upon record until after the sheriff's sale and the record of the sheriff's deed, although they went into immediate possession of the property, have ever since resided thereon, and have made valuable improvements. One of the plaintiffs, on examining the records, and finding that defendant's deed was not recorded, directed the sheriff to levy upon the property, and at the sale bid it in for a nominal consideration. It is one of those attempts, generally unsuccessful, though too often otherwise, to take advantage of the negligence of those who rest secure in the possession of their property, and to transfer it to those who are watching for opportunities to prey upon the unwary.

The case was submitted to the court, and the defendants recovered judgment. I need not consider in detail the numerous declarations of law given and refused, but the record shows a full and fair trial, and that no other result could have been reached. The effect of a failure to place upon record one's title

20—VOL. XLVII.

deeds has often been considered by this court, and it has always been held here, as elsewhere, that, as between the purchaser and his vendor, it is of no importance that the deed be recorded at all. The same is held as between the holder of the first conveyance and subsequent purchasers from the same vendor, if they purchase with notice of the original conveyance, or if their purchase was not made upon payment of a good and *valuable* consideration. The payment of the consideration raises the equity that invalidates the first deed. (Paul v. Fulton, 25 Mo. 156; Aubuchon v. Bender, 44 Mo. 560.) The statute invalidating the original unrecorded deed is held to operate in favor of *bona fide* purchasers at sheriffs' as well as private sales, provided the original deed be not recorded until after the sale. (Davis v. Ownsby, 14 Mo. 170; Draper v. Bryson, 17 Mo. 71, and 26 Mo. 108; Valentine v. Havener, 20 Mo. 133; Reed v. Ownby, 44 Mo. 204.) But differences have often arisen as to what constitutes the notice spoken of in the statute.

The following is the section declaring the effect upon the unrecorded instrument of a failure to file for record: "Sec. 26. No such instrument in writing shall be valid except between the parties thereto, and such as have actual *notice* thereof, until the same shall be deposited with the recorder for record."

The actual notice required by the statute is used in contradistinction to the constructive notice given by a record. It does not mean that there must necessarily be direct and positive evidence that the subsequent purchaser actually knew of the existence of the deed. Any proper evidence tending to show it — facts and circumstances coming to his knowledge that would put a man of ordinary circumspection upon inquiry — should go to the jury as evidence of such notice. The second sale by one who has already conveyed the property is necessarily fraudulent; and if it appears in evidence that the purchaser knows that the holder of the unrecorded deed is in possession of the property as owner, or that he is informed that such holder has bought the property, the jury has a right to infer full knowledge or voluntary ignorance; and if he buy with such knowledge, or such means of knowledge, he becomes a party to the fraud, and will not be permitted to take

advantage of it. In Speck v. Riggin, 40 Mo. 405, the court holds that "notice is actual where the purchaser either knows of the existence of the adverse claim or title, or is conscious of having the means of knowing, although he may not use them." And the majority of the court, per Leonard, J., in Vaughn v. Tracy, 22 Mo. 417, and 25 Mo. 318, holds that evidence of possession and apparent ownership, brought home to the knowledge of the second purchaser, should go to the jury, and ought to be deemed sufficient information "that the possessor is the owner in fee under a title derived from the former owner." Proof of actual knowledge of the existence of the former deed has never been held to be necessary; but the jury has the right to infer such knowledge from facts that would naturally suggest it, and from which the actual relation of the prior purchaser of the land might be reasonably inferred. The doctrine of Judge Scott, in Beattie v. Butler, 21 Mo. 313, was expressly disclaimed by his associates, and has never been sustained by this court.

It will be thus seen that the court committed no error in refusing to declare as law, at the instance of plaintiffs, that "actual notice consists in the fact that the purchaser of lands has the direct and positive information that there has been a former deed executed and delivered to some other person, or that there is some one in possession of the lands claiming title, which information must be brought home to the party purchasing," etc. The declaration would have substituted the necessity of actual knowledge for the statutory requirement of actual notice, and, besides, would have required a character and degree of evidence the party had no right to claim. Judge Bates, in commenting upon a similar instruction, says that "the specification of the character of the proof was erroneous. Notice is a fact to be proved, like other facts, by evidence direct or circumstantial." (Lemay v. Poupenez, 35 Mo. 71.) The court, however, at plaintiff's instance, did declare as law (and went as far as they had a right to claim) that unless one of the plaintiffs had the information or knowledge brought home to him that defendants were living upon the specified lands, claiming title, the plaintiffs should recover. Other declarations of law were given at the instance of the

plaintiffs, and several rejected. Some of the latter were well enough as general propositions, but their substance was embraced in others, and they were not called for. From the declarations made and refused there can be no doubt as to the views of the law that inspired the action of the court, and in those views we concur. There was evidence, both direct and circumstantial, strongly tending to show that one of the plaintiffs — the one who did all the business, ordered the levy, and bid off the land — positively knew that defendants occupied the farm as owners. It satisfied, and was sufficient to satisfy, the court below that he knew all about it, and that he never dreamed of levying upon the land until he was informed by the recorder that the deed had not been recorded.

It will be perceived that the court held that open and notorious possession by the grantee in the unrecorded deed as owner, was not of itself notice to subsequent purchasers, but required affirmative evidence that they knew of such possession. As judgment was given for defendant, it does not become necessary to consider that question. (See, upon this subject, 3 Washb. Real Prop., 3d ed., 283-4, and cases cited; and remarks of Judge Scott in Beattie v. Butler, 21 Mo. 313 ; and of Judge Leonard in Vaughn v. Tracy, 22 Mo. 415, and 25 Mo. 318.)

But even if the court committed an error upon the question of notice, the plaintiffs could take nothing by their purchase, for the reason that the sheriff had no authority to sell. The execution was issued under the act of March 23, 1863, which required the clerk, in issuing new executions, to refer to the former ones, " and in case levies have been made, to recite such levies in such renewed executions, and authorize and command the officer to whom such renewed executions are directed to levy such renewed executions upon additional property, if the former levy shall be deemed insufficient to satisfy such executions."

The clerk issued an ordinary *venditioni exponas*, reciting the old levies and ordering the sale of what had been levied on, but left out entirely the command to levy upon additional property. That in dispute had not been included in the former levies, but the sheriff proceeds with this writ to levy upon and sell other property, including the defendant's farm. Thus the levy and sale were not

Maupin et al. v. Emmons et al.

in obedience to the command of the writ under which they were had. Counsel now claim that, inasmuch as it was the duty of the clerk to insert in the new execution a command to make new levies, the writ must be treated as having contained such command, and the sheriff was clothed with the same power as though it had been inserted.

This proposition runs counter to all our ideas of the powers and duties of sheriffs. It has always been considered that he was but the executive officer of the court, bound to obey its lawful commands, and, in executing a writ, that he must look to the face of it for the extent and boundary of his duties and his powers. It does not matter what writ might have been issued — to what writ the party was entitled by law if he had chosen to sue it out. When it is issued and placed in the officer's hands, his only duty is to see what are its commands, and if he finds them within the authority of the court he must obey them. But he can not go beyond those commands, or question their regularity. If he is ordered merely to sell certain property, the order gives him no authority to seize and sell any other property. If the writ is merely a *fieri facias* he can not under it sell property as having been seized under a former writ. If the clerk has not issued the proper process — that is, between him and the parties to the cause — the sheriff can not correct their errors. These principles are so elementary, so universally received and acted upon, as never to be disputed.

Counsel have cited us to Towner v. Purkey, 1 Con. Court, S. C., 323, where an execution was amended in a material part by correcting a clerical error, and claim that the omission in the present case was but a clerical mistake and should be disregarded. But it was much more than a clerical mistake; it was a total omission of the *fieri facias* portion of the writ. As issued, it was in substance but the well-known writ of *venditioni exponas;* and the omission of the additional power to make new levies, authorized by the statute as well as the common law, was not a clerical mistake, but a neglect by the party in interest to sue out the double writ to which he was entitled.

The judgment of the District Court, affirming that of the Circuit Court, is affirmed. The other judges concur.