JOHN D. ABBE, Plaintiff, v. JAS. H. JUSTUS, Respondent; E. L. SANFORD, Assignee, Appellant.

Kansas City Court of Appeals, January 14, 1895.

1. **Marshalling Assets:** SURPLUS PROCEEDS. When there are several liens and a sale under one of them, the surplus belongs in equity to the next subsequent liens in the order of their priority.

2. **Deeds:** DELIVERY: DEPOSITORY. To constitute a delivery of a deed by placing it in the hands of a third party, it must be done with the intent on the part of the grantor that it should take effect as his deed in favor of the grantee and must be held by the third party beyond the dominion of the grantor; and the evidence in this case, though conflicting, justifies a finding that there was a delivery.

Abbe v. Justus.

3. **Notice**: ACTUAL AND IMPLIED: STATUTE. Actual notice is actual knowledge, and implied notice is knowledge of facts and circumstances from which the law conclusively presumes notice; and actual notice is proved or inferred like any other fact, and section 2420, Revised Statutes, requires actual notice as distinguished from implied notice.

4. ————: ACTUAL: CONSTRUCTIVE: STATUTE. The statute does not mean that there must necessarily be direct and positive evidence that the subsequent purchaser actually knew of the former deed, but his knowledge may be shown by facts and circumstances that would put a man of ordinary circumspection upon inquiry. Constructive notice is a legal presumption. In some cases it may be rebutted, in many it can not be gainsaid.

5. ————: POSTPONEMENT OF PRIOR RECORDED INSTRUMENT. Notice that will postpone a recorded instrument to a prior unrecorded one must be actual but it can be shown by direct evidence or inferred from circumstances.

6. ————: INSTRUMENT RECITING INCUMBRANCES. Where a party holds under a recorded instrument which recites prior incumbrances and he searches the record, he is charged with knowledge of the recitals in such conveyance; and, in this case, the recitals are *held* sufficient to put an ordinarily prudent man upon his inquiry.

7. ————: EQUITY. He who takes with notice of an equity takes subject to that equity.

8. ————: VENDOR'S LIEN: EVIDENCE. From the evidence it is *held,* that the bank at the time of taking its lien on the real estate in question had notice of the respondent's vendor's lien.

*Appeal from the Polk Circuit Court.*—HON. ARGUS COX, Judge.

AFFIRMED.

*Lincoln & Lydy* for appellant.

(1) Where there are several liens on a tract of land and it is sold under one of them, the surplus, after paying the lien under which it was sold, belongs in equity to the next subsequent liens in their order of priority. *Strawbridge v. Clark*, 52 Mo. 21; *Foster v. Potter*, 37 Mo. 534; *Reid v. Mullins*, 43 Mo. 306; *Helweg v. Heit-*

*camp*, 20 Mo. 569. (2) The weight of the evidence is that Shriner never delivered his deed of trust to Justus. Until a delivery took place no lien under it could be acquired. *Standiford v. Standiford*, 97 Mo. 231, *loc. cit.* 238. (3) Having refused to take the deed of trust, and having stated that Shriner's "note was good enough if he would pay it in a short time" (p. 37), it is useless to contend that Justus relied on a vendor's lien for the balance due him. A vendor's lien is waived by conduct inconsistent with intention of retaining it. Warvelle on Vendors, pp. 712–694, and cases cited. (4) An action to enforce a vendor's lien is an action *in rem*. (*Zoll v. Carnahan*, 83 Mo. 35, *loc. cit.* 41), and must be brought directly for that purpose. It can not be enforced in any collateral suit. Tiedeman on Equity Jurisprudence, sec. 404, p. 479, and cases cited; *Converse v. Blumrick*, 14 Mich. 124; 2 Washburn on Real Property [4 Ed.], p. 94, par. 20. If such lien be waived, equity will not renew it. *Bunger v. Potter*, 32 Ill. 66, *loc. cit.* 72. (5) The vendor's lien can not be retained against creditors holding under a *bona fide* mortgage or conveyance from the vendee nor against a subsequent purchaser without notice. *Bayley v. Greenleaf*, 7 Wheaton, 46; 4 Kent's Com. [12 Ed.], p. 157, star p. 154, and notes. (6) The recital in the deed from Alonzo F. Shriner to Lafayette Shriner, to wit: "Subject to incumbrances of $2,208.50," is not sufficient to charge the Bank with notice of Justus' claim. The recital must be such as explains itself by its own terms. *White v. Carpenter*, 2 Paige (N. Y.) 217; *Bank v. Delano*, 48 N. Y. 326; *Bell v. Twilight*, 22 N. H. 500; s. c., 45 Am. Dec. 367; *Kaine v. Denniston*, 22 Pa. St. 202; *Lodge v. Simonton*, 2 (P. & W. (Pa.) 217; *Van Slyck v. Skinner*, 41 Mich. 186; *Morris v. Murray*, 82 Ky. 36; *French v. Land Co.*, 5 Leigh Va. 627; Am. and Eng. Encyclopedia of Law, p. 800;

*Draude v. Mfg. Co.*, 9 Mo. App. 249. (7) The evidence does not show that the bank had actual notice of this recital. "It is absurd to say that constructive notice puts a man upon inquiry." *Cass County v. Oldham*, 75 Mo. 50, *loc. cit.* 52; R. S., sec. 2420.

*T. G. Rechow, Herman Pufahl* and *B. J. Emerson* for respondent.

(1) This court will not review the finding of facts if there is any evidence to sustain the same. *Kolbaum v. Roepke*, 27 Mo. 161; *Altum v. Arnold*, 27 Mo. 264; *Easley v. Elliot*, 43 Mo. 290; *Harrington v. Minor*, 80 Mo. 270; *Cunningham v. Snow*, 82 Mo. 593; *Handlan v. McManus*, 100 Mo. 124; *Pitts v. Sheriff*, 108 Mo. 114; *Magee v. Burch*, 108 Mo. 341; *Price v. Ins. Co.*, 48 Mo. App. 281. (2) There was ample testimony upon which to find delivery of the deed of trust. *Wheelwright v. Wheelwright*, 2 Mass. 447; *Jackson v. Cleveland*, 15 Mich. 94; *Tompkins v. Wheeler*, 41 U. S. 106; *Gould v. Day*, 94 U. S. 412; 4 Kent's Commentaries, star p. 455; Tiedeman on Real Property, sec. 814; *Sneathen v. Sneathen*, 104 Mo. 209; *White v. Pollock*, 117 Mo. 472. (3) Respondent's note was for the balance of the purchase money; he not only had the deed of trust but a vendor's lien also. *Morris v. Pate*, 31 Mo. 315; *Lumville v. Savage*, 58 Mo. 249; *Rogers v. Tucker*, 94 Mo. 346; *Hannah v. Davis*, 112 Mo. 604; *Demeter v. Wilcox*, 22 S. W. Rep. 615. (4) The evidence is abundant to establish notice to the Bank of Commerce. *Miller v. Blume*, 80 Mo. 183; *Bronson v. Wanzer*, 86 Mo. 408; *Hagerman v. Sutton*, 91 Mo 533; *Wolf v. Dyer*, 95 Mo. 545; *Drey v. Doyle*, 99 Mo. 469; *Johnston v. Shortridge*, 93 Mo. 232; *Freeman v. Moffitt*, 119 Mo. 302; *Ins. Co. v. Smith*, 117 Mo. 292; *Bank v. Frame*, 112 Mo. 512; *Taaffee v. Kelley*, 110 Mo. 136; *Loring v. Groomer*, 110

Mo. 641; *Werner v. Litzinger*, 45 Mo. App. 109; *Mason v. Black*, 87 Mo. 341; *Brush v. Ware*, 15 Peters (U. S.) 112, book 10, L. C. P. Co., bottom page, 680.

SMITH, P. J.—Abbe, the plaintiff, had $541.45, the proceeds arising from the sale of certain mill property by him under a second deed of trust, remaining in his hands as trustee after payment of the trust debt. This sum was claimed by both the appellant and respondent.

The plaintiff filed his petition in the circuit court stating the foregoing facts in detail and praying the court to require the appellant and respondent to appear and interplead in this cause, setting up their respective claims to the fund so in the hands of the plaintiff, trustee.

The Bank of Commerce becoming defunct, the appellant, Sanford, being its assignee, was substituted as a party in its stead, and by interplea claimed the fund under a deed of trust dated July 7, 1892, and duly recorded, executed by A. F. Shriner to secure a promissory note to said bank for $807.

The respondent, Justus, also filed his interplea, wherein it was stated that May 31, 1892, he was the owner of certain real estate, on which was situate a steam flouring mill, etc.; that on said day he executed to Abbe, as trustee, a deed of trust on said mill property to secure the payment of a note to Wilcox for $500, subject to a prior deed of trust to secure $1,200; that afterwards on said day he sold and conveyed by deed said mill property to Alonzo F. Shriner; that as a part of the consideration in said deed the said Shriner assumed the payment of the notes in the two deeds of trust mentioned, which amounted in the aggregate to about $1,708.50, as in said deed recited, and the said Alonzo F. Shriner executed to this respondent his

promissory note of said date for the sum of $502,50 for the balance of the purchase money on said property and executed a deed of trust back on said property to J. D. Abbe, as trustee at the same time, to secure the said note; that afterward, on the same day, Alonzo F. Shriner conveyed said lands to his brother, Lafayette Shriner, in which deed of conveyance he recited that the said lands were subject to prior liens of about $2,208.50, which sum represented the said sum to which the interpleader's deed to Alonzo F. Shriner was made subject, and the payment of which he therein assumed and the balance of the purchase money due from said interpleader for said property. That said deed from Alonzo F. Shriner to Lafayette Shriner was on the second day of June, 1892, duly filed for record in the recorder's office of Polk county, Missouri, and recorded in book forty (40), at page 602, so that said Lafayette Shriner and all persons claiming by, through or under him took with full knowledge of this interpleader's lien.

The allegations of the interpleas of the appellant and respondent were each put in issue by the replication of the other, so that from thereon the controversy was only between them. Upon a hearing of the pleadings and evidence the court found the issues for the respondent and decreed accordingly, to reverse which this appeal is prosecuted.

It must be conceded that when there are several liens on a piece of real property and it is sold under one of them, the surplus after paying the lien under which it was sold, belongs, in equity, to the next subsequent liens in the order of their priority. *Strawbridge v. Clark*, 52 Mo. 21; *Foster v. Potter*, 37 Mo. 534; *Reid v. Mullins*, 43 Mo. 306; *Helweg v. Heitcamp*, 20 Mo. 569.

It is contended by the appellant that there was no delivery of the deed of trust to respondent by A. F. Shriner, and that consequently that under which he claims the fund in the hands of the trustee is the next lien in the order of priority to that under which the sale was made by the trustee. The infallible test of delivery is the fact that the grantor has divested him-self of all dominion and control over the conveyance. To constitute a delivery of a deed by placing it in the hands of a third party, it must be done with the intent on the part of the grantor, that it should take effect as his deed in favor of the grantee. It must be held by the third party so as to be beyond the control and dominion of the grantor. There must be a time when the grantor parts with the dominion over the deed, else it can never be delivered. So long as it is in the hands of the depository, subject to be recalled by the grantor at any time, the grantee has no right to it. *Ells v. Railroad*, 40 Mo. App. 165; *Vanstone v. Goodwin*, 42 Mo. App. 39; *Huey v. Huey*, 65 Mo. 690; *Hammerslough v. Cheatham*, 84 Mo. 13; *Tobin v. Bass*, 85 Mo. 654; *Standiford v. Standiford*, 97 Mo. 231.

There is evidence contained in the record which tends most strongly to prove that the appellant exchanged his mill in Missouri for that of Shriner in Kansas, and that Shriner executed and delivered the $500 deed of trust in question to Snodgrass in escrow. At the time of this transaction, May 31, 1892, Shriner entered into a written agreement with respondent to the effect "that as a condition of the mill deal with James A. Justus that if the Cherryvale mills (Kansas) are not standing, I will transfer the property, the Boliver Roller Mills, back to James Justus, he to return the $500 mortgage. I guarantee the mill to be standing until word can be had from them, or until

George Justus can reach Cherryvale, after which my guarantee ceases. (Signed) A. F. SHRINER."

There is further evidence tending to show that it was subsequently ascertained that the Cherryvale mill was standing and thereupon on June 11, 1892, Snodgrass delivered the mortgage to respondent which was filed for record August 31, 1892. While there is some conflict in the evidence it seems to us that it was ample to justify the court in finding as it did that there was a delivery and acceptance of the mortgage and that in consequence thereof it became operative.

Appellant further contends that the deed of trust under which he claims the fund was filed for record on July 12, 1892, and prior to the filing of the deed of trust of the respondent and that its deed of trust was taken upon a good and sufficient consideration in good faith and without notice of the respondent's mortgage lien. It appears from the evidence that the appellant's deed of trust has for its support a good and sufficient consideration. Whether the appellant had actual notice of the respondent's deed of trust at the time of the making of its deed of trust is the vital question in the case.

Under our statute "no such instrument in writing shall be valid, except between the parties thereto and such as have actual notice thereof, until the same shall be deposited with the recorder for record." R. S., sec. 2420. What, then, is actual notice within the meaning of this statute? The supreme court, in *Drey v. Doyle*, 99 Mo. 459, quoted with approval from *Vaughn v. Tracy*, 22 Mo. 420, to the effect that "the former (actual notice) was actual knowledge or information; and the latter (implied notice) facts and circumstances not amounting to knowledge or information, from which the law conclusively presumes notice which it would not allow to be controverted by contrary evidence. Actual notice, like any other fact, might be proved by

direct evidence, or inferred from the facts and circumstances, but however proved, whether by direct evidence or inferred from other facts, it was actual notice and clearly distinguished from implied notice. We think the legislature here referred to actual notice as contradistinguished from implied notice both of which were well known terms in our law when the act was passed."

In *Maupin v. Emmons*, 47 Mo. 304, it was said that the actual notice required by the statute "does not mean there must necessarily be direct and positive evidence that the subsequent purchaser actually knew of the existence of this deed. Any proper evidence tending to show it—facts and circumstances coming to his knowledge that would put a man of ordinary circumspection upon inquiry—should go to the jury as evidence of such notice." And to the same effect is *Shumate v. Reavis*, 49 Mo. 333; *Whitman v. Taylor*, 60 Mo. 127.

So it has been declared that notice may be either actual or constructive. It is actual when the purchaser either knows of the existence of the adverse claim or title, or is conscious of having the means of knowledge, although he may not use them. Constructive notice is a legal presumption, and will be conclusive unless rebutted, and in many cases it can not be gainsaid, or denied, even by evidence of the absence of knowledge, or notice. *Rhodes v. Outcalt*, 48 Mo. 367; *Speck v. Riggin*, 40 Mo. 405. Along this line of adjudication in this state, the following are some of the additional cases that may be cited: *Miller v. Blume*, 80 Mo. 183; *Bronson v. Wanzer*, 86 Mo. 408; *Haegerman v. Sutton*, 91 Mo. 533; *Wolfe v. Dyer*, 95 Mo. 545; *Drey v. Doyle*, 99 Mo. 469; *Johnston v. Shortridge*, 93 Mo. 232; *Freeman v. Moffitt*, 119 Mo. 302; *Conn. Mut. Life Insurance Co. v. Smith*, 117 Mo. 292; *The State Bank of*

*St. Louis v. Frame*, 112 Mo. 512; *Tauffee v. Kelley*, 110 Mo. 136; *Loring v. Groomer*, 110 Mo. 641; *Mason v. Black*, 87 Mo. 341.

It is plain to be seen that the notice that will postpone a recorded instrument affecting real estate to a prior unrecorded one, must be *actual notice*. Such notice may be shown by direct evidence, or it may be inferred from facts and circumstances. In *Major v. Bukley*, 51 Mo. 227, it was said that notice in this connection does not mean positive information, brought directly home to the party sought to be charged therewith and affected thereby, but any fact that would put an ordinarily prudent man on inquiry is notice. It will be remembered that respondent and A. F. Shriner exchanged mill properties; that part of the consideration for this exchange was the assumption by Shriner of the payment of certain prior incumbrances on the mill respondent conveyed to Shriner, amounting to $1,700, which was recited in that deed. As a further consideration for said exchange, Shriner agreed to pay respondent $500, for which he executed his promissory note, and the deed of trust already referred to, to secure the same. After the execution of this deed of trust and on the same day, the said A. F. Shriner, by deed duly recorded, conveyed the said mill property acquired from respondent to Lafayette Shriner, and in said deed it is recited that, "This deed is made subject to incumbrances of $2,208.50."

This recital was, it seems to us, sufficient to put the bank on inquiry as to the nature of the incumbrances therein referred to. If the records, when searched, failed to disclose any incumbrances, or the nature of the same, yet by application to either respondent or Shriner, it could have obtained the information in respect to such incumbrances. Shriner, from whom the bank was taking a deed of trust, had

executed to his brother, Lafayette Shriner, the deed in which was contained the recital just stated. A. F. Shriner, by the very terms of his deed to Lafayette Shriner, made the public and constant assertion of the existence of the incumbrances on the property. The evidence was undisputed that the bank had caused one of its officers to examine the records of Polk county, touching the condition of the title to the property. The result of this examination seems to have been communicated to the managing officers of the bank.

We must infer that these officers, when they took the deed of trust for the benefit of the bank, had knowledge of the recital in the Shriner deed just mentioned. According to the authorities, this was quite enough to put an ordinarily prudent man on the alert. *Werner v. Litzsinger*, 45 Mo. App. 106; *Majors v. Bukley*, 51 Mo. 227; *Drey v. Doyle*, 99 Mo. 469, *supra;* *Bronson v. Wanzer*, 86 Mo. 408; *Maupin v. Emmons*, 47 Mo. 304.

If they failed to make the inquiries which the facts with which they were acquainted suggested, and thus find out the nature of the recited incumbrances, it was their own fault, the consequences of which must rest upon the bank. "He who takes with notice of an equity, takes subject to that equity," is a maxim of equity.

But, independent of the deed of trust, of the existence of which, we think, the bank had actual notice, or what was its equivalent, the respondent had a vendor's lien for the amount of the note, and of the existence of this lien, there is some evidence that the bank was apprized at the time it took the deed of trust, under which it makes claim to the fund.

It seems to us that it is immaterial whether the respondent's claim to the fund is made to rest upon the theory of a prior unrecorded deed of trust, or upon

that of a vendor's lien, since, upon either theory, there is evidence amply sufficient to support the decree, and for that reason we ought not to review the finding of facts by the trial court. *Demske v. Hunter*, 23 Mo. App. 469; *Welsh v. City of St. Louis*, 73 Mo. 73; *Bollinger v. Carrier*, 79 Mo. 318; *State ex rel. Estes v. Gaither*, 77 Mo. 305.

We are unable to discover any ground upon which we would be justified in disturbing the decree of the trial court, so it results that the same must be affirmed. All concur.