Ladd v. Shippie, et al.

———o———

Amos Ladd, Respondent, vs. L. C. Shippie, et al., Appellants.

1. *Sheriff's sales—Notice—Time of sale—Innocent purchaser.*—Real estate sold on execution, must be sold at the time and place announced in the notice given for such sale, and the sale cannot be postponed to another day by order of court, without a new notice; and when a sale is so postponed, the purchaser is not protected by his good faith, if the want of notice or defect of notice appears on the face of the sheriff's deed.

*Appeal from Audrain Circuit Court.*

*G. B. Macfarlane*, for Appellants.

I. The sheriff's deed was void upon its face and wholly inoperative to pass any interest defendant, Willingham, had in the lot. The statute required the deed to recite the names of the parties to the execution, the date when issued, the date of the judgment, order or decree and other particulars as recited in the execution; also a description of the property, the time, place and manner of sale. (R. S., 1835, § 45, p. 259.)

II. The deed fails to recite the names of the parties to the execution; that the sale took place between the hours prescribed by the law; that the sale was for cash; or that the purchaser was the highest bidder. (Rorer Jud'l Sales, 658; Piel vs. Brayer, 30 Ind., 332; Stewart vs. Huston, 25 Ark., 311; Tanner vs. Stine, 18 Mo., 583; Curd vs. Lackland, 49 Mo., 454; Wack vs. Stephenson, 54 Mo., 485; Lackey vs. Lubke, 36 Mo., 121.)

III. It appears from the deed that the sale was made upon a day unauthorized by law. (R. S., 1835, § 38, 39; McCormack vs. Fitzmorris, 39 Mo., 32; Buchanan vs. Tracy, 45 Mo., 442; Merchant's Bank vs. Evans, 51 Mo., 345.)

IV. The purchaser at sheriff's sale must look to the judgment, the execution, the levy, and the deed; as to them the rule *caveat emptor* applies. (Bank State Mo. vs. Bray, 37 Mo., 195; Lenox vs. Clark, 52 Mo., 115; Rorer Jud'l Sales, 589; Wheaton vs. Sexton, 4 Wheat., 503; Brooks vs. Rooney, 11 Georg., 423; Phillips vs. Coffee, 17 Ills., 154.)

*Craddock & Musick*, for Respondent.

VORIES, Judge, delivered the opinion of the court.

This was an action of ejectment originally brought against defendant, Shippie, to recover possession of lot one in block eight, in the city of Mexico, in Audrain county.

The petition was in the usual form. The defendant, Shippie, appeared and filed his answer, denying the allegations of the petition. The defendant, Smith, afterward appeared, and on his own application was made a party defendant, and filed an answer in which he claimed title to the lot sued for, averring that his co-defendant was in possession thereof as his tenant, and also denying the facts in the petition.

In June, 1874, a trial of the case was had before a jury. It was admitted by both parties that they claimed title to the lot in question from James Smith, who was the common source of title. The plaintiff offered evidence on his part which tended to prove that James H. Smith had sold and conveyed the premises to one John Willingham.

The plaintiff next offered in evidence a deed dated the 28th day of July, 1841, made by the sheriff of Audrain county, and purporting to convey the interest of said John Willingham and others in the land in controversy to one William Bybee. This deed was objected to by the defendant upon the ground that the deed was void upon its face, for the reason that it was shown by its recitals that the sale of the lot was made at a time not authorized by law, and that it failed to show that the sale was made in the manner required by law. These objections were overruled, and the deed read and the defendants excepted.

The plaintiff then offered evidence tending to prove that William Bybee died intestate in the year 1852, leaving six heirs, and that by death and conveyances five-sixths of the premises in controversy became vested in William Bybee, Garland Bybee, James Bybee and Elizabeth Hagan, the wife of William L. Hagan; the said Elizabeth being the owner of one-sixth interest in the premises.

Plaintiff then read in evidence a quit-claim deed, dated in 1852, conveying the interest of James Bybee to William Bybee, and offered to read a quit-claim deed from Elizabeth Hagan and her husband, William L. Hagan, conveying their interest in said land to Garland Bybee. This deed was ob-

jected to by the defendants on the ground that the acknowledgment of said deed was defective, which rendered the deed ineffectual to convey the premises. The court overruled the objection and admitted the deed, and defendants excepted.

The plaintiff also read in evidence deeds from William and Garland Bybee to plaintiff for the land in controversy, and closed in evidence.

The defendants on their part introduced evidence tending to prove : 1st—that James Smith, who was the common source of title to the lot in controversy, died intestate in the year 1846, and that they derived title from his heirs ; 2nd—they introduced a judgment rendered in the Audrain Circuit Court dated July 2, 1839, wherein Charles A. Day was plaintiff and Thomas D. Kilgore and Thomas Kilgore were defendants to the action; but the judgment, having been rendered in a case appealed from a justice of the peace, was rendered against said defendants, and also against Isham T. W. Kilgore and John Willingham, securities in the appeal bond, the judgment being for $44.25 and costs, and being the same judgment recited in the sheriff's deed read by plaintiff; 3rd —the defendants then read in evidence four executions which purported to have been issued on said judgment, as follows:

1st.—An execution issued on the 27th day of January, 1840, which recites the judgment and the parties thereto correctly, and commands the sheriff, as he has before been commanded, that of the goods and chattels and real estate of said defendants he cause to be made, etc. This execution was returnable on the first Monday of March, 1840, and the return thereon shows a levy on two town lots (neither of which is the one in controversy), and that the same were not sold for want of bidders.

2nd.—An execution issued on the 11th of June, 1840, which is in the usual form, takes no notice of the former executions or the levies thereunder, and was returnable on the first Monday of July, 1840. The following return is indorsed thereon by the sheriff : " This execution came to hand on the 11th day of June, 1840. Lot 6 in block 13, lot 1 in block

8; nothing bid for said property. This 7th day of July, 1840."

3rd.—An execution dated the 14th November, 1840. This execution is simply a *venditioni exponas*. It recites a judgment of the proper date and amount recovered by Chas. A. Day against "Thomas D. Kilgore and Thomas Kilgore and John Willingham, their security in the appeal bond," omitting the name of Isham T.W. Kilgore as one of the defendants. It also recites that, on the 11th day of June, 1840, command was given to the then sheriff of said county that of the goods, etc., of the said Thomas D. Kilgore, Thomas Kilgore and John Willingham, their security in the appeal bond, in said county, he cause to be made, etc., which writ was levied on lot 6 in block 13, and lot 1 in block 8, in the city of Mexico, *the real estate of the said Thos. D. Kilgore and Thomas Kilgore*, to satisfy said judgment, etc., and that said real estate remained unsold for want of bidders. The sheriff, after this recital, is commanded to expose the property so levied on by the previous writ to sale, and make return to the court, etc. This last writ was returned without a sale of the property, no court having been held at the time fixed for the sale.

4th.—Another writ of *venditioni exponas* issued on the 27th day of May, 1841, returnable to the July term, 1841, of said court. This writ recites the judgment just as it is recited in the last preceding writ, and then states that on the 14th day of November, 1840, command was given to the then acting sheriff that of the goods and chattels and real estate of the three defendants named he should cause to be made, etc., and that said sheriff had returned said writ indorsed thereon that it had been levied on the lots named, the *real estate of the said Thomas D. Kilgore and Thomas Kilgore* to satisfy said writ, and which real estate remains unsold, etc. The writ then states that, "Therefore, you are commanded to expose the property so levied on to sale," and concludes in the usual form. The return to this last writ shows that the two lots were sold for the sum of $2.25, but fails to show to whom the sale was made.

The foregoing was all of the evidence in the case. The court then, at the instance of the plaintiff, instructed the jury that the sheriff's deed read in evidence vested any interest that John Willingham had in the land in controversy in William Bybee, and that the deed of said Elizabeth and her husband vested all of the interest of Elizabeth in said land.

The defendant objected to said instruction and excepted.

There were a number of other instructions given and refused, which need not be noticed here.

The jury found for the plaintiff as to five-sixths of the lot in controversy, and judgment was rendered accordingly.

After an unsuccessful motion for a new trial, the defendants appealed to this court. There are two questions presented to this court by the appellant for consideration, which grow out of the admission of the sheriff's deed to William Bybee, and the deed of Elizabeth Hagan and her husband to Garland Bybee, in evidence by the court, and the instructions given by the court, as to the validity and effect of said deeds.

There are several objections made to the deed from the sheriff to William Bybee, some of which grow out of a variance between the executions or writs, under the judgment upon which they were issued, and others growing out of a variance between the writs under which the levy and sale were made and the recitals in the deed. And it is also objected that the deed is void on its face from its own recitals. The irregularities in the different executions issued on the judgment, and under which the levy and sale were made, were generally technical, and need not be discussed for the purposes of this case. The recitals in the deed as to the advertisement and sale of the land in controversy are as follows: "And whereas, said town lots were advertised for sale by me, said sheriff, by six hand-bills signed by myself, and put up at least twenty days before the day of sale, and exposed to sale at public vendue before the court-house door in said county of Audrain, on the 28th day of July, A. D. 1841, while said Circuit Court was in session, it being the

Ladd v. Shippie, et al.

next day after the day set for sale in said hand-bills, being an order made by said court to adjourn said sale until next day, and there being a proclamation made at the door of said court house to that effect by said sheriff, and the said land or lots being struck off to the said William Bybee, for the sum of $2.18, he became the purchaser thereof. Now, therefore, etc."

It is contended by the defendant that the land having been sold on a day different from the day for which it had been advertised, as appears from the recitals in the deed, the sheriff's deed is therefore void and conveys no title to the purchaser. By the 38th and 39th sections of the act of 1835 to regulate executions (Revised Statutes of 1835) which was the law in force at the time of this sale, it is provided as follows:

"Sec. 38.   When real estate be taken in execution by any officer, it shall be his duty to expose the same to sale, at the court-house door, on some day during the term of the Circuit Court of the county, where the same is situated, having previously given twenty days' notice of the time and place of sale, and what real estate is to be sold, and where situated, by at least six hand-bills, signed by him and put up in public places in different parts of the county, or by advertisement in some newspaper printed in the county."

"Sec. 39.   All property taken in execution by any officer shall be exposed to sale on the day for which it is advertised, between the hours of 9 in the forenoon and 5 of the afternoon, publicly, by auction, for ready money, and the highest bidder shall be the purchaser."

There is a further provision made for a re-sale of property where the first purchaser shall fail to pay the purchase money.   It appears from the recitals in the deed in question that the lots were not sold on the day for which they were advertised, but that the sale was postponed until the next day by an order of the court, and by proclamation of the sheriff.   It does not appear at whose motion the sale was postponed by the court, or that either party was present consenting thereto; nor does it appear at what particular time the proclamation was made at the court-house door.   It seems

34—VOL. LVII.

to me that it would be a very dangerous precedent to hold that a sale might be postponed in this way; it would open the door for abuse. The statute plainly requires that the sale shall be made on the day for which the land is advertised, and to hold the notice good in this case would be clearly to disregard the statute. (Patton vs. Stewart, 26 Ind., 395, and cases there cited.) There may be cases found where it is held that an officer has the power to postpone a sale, but I apprehend that such cases will be found to have been controlled by statutes radically different from ours. It has been held by this court that where a purchaser at sheriff's sale fails to pay the purchase money, the sheriff may make another sale of the property without a re-advertisement; but the right to do so is placed on the particular reading of the statute authorizing such sale.

It is, however, insisted that Bybee, being an innocent purchaser, without notice of the irregularity of the sale, will not be affected thereby, and his title under the purchase will be complete. This is very true that where a stranger to the judgment and proceedings is the purchaser in good faith without notice, he will not be affected by any irregularity in the notice, but this rule does not apply where the defect in the notice or want of notice appears on the face of the sheriff's deed. The rule is that a purchaser at sheriff's sale must rely on the judgment, execution, the levy and the deed; if he can show an authorized execution and deed, a correct levy and notice may be presumed. (Rorer Judicial Sales, 589; Curd vs. Lackland, 49 Mo., 451; Draper vs. Bryson, 17 Mo., 71; Buchanan vs. Tracy, 45 Mo., 437; Lenox vs. Clark, 52 Mo., 115.)

But it is otherwise where the defects appear by the recitals in the sheriff's deed. (Merchant's Bank of Missouri vs. Evans, 51 Mo., 335; Jackson vs. Magruder, *Id.*, 55; Wilhite vs. Wilhite, 53 Mo., 71.) In the case of Buchanan vs. Tracy, just referred to, it was shown by the evidence that the sale was actually made on the day for which the land was advertised. This, it was held, explained and cured the mis-recital

in the deed. It follows that, as the defect in the notice, or the want of notice, in the present case, appears in the recitals of the deed, the purchaser is bound by them, and the deed will confer no title. The deed was, therefore, improperly received in evidence, and the instruction given by the court as to its effect was improperly given. It would be wholly useless to discuss the sufficiency of the deed from Elizabeth Hagan and her husband. The sheriff's deed having been held bad, she would have no title to convey, and the sufficiency of her deed need not be brought in question.

The judgment will be reversed and the cause remanded; the other judges concur.