EMINENCE LAND & MINING COMPANY, Appellant, v. CURRENT RIVER LAND & CATTLE COMPANY et al.

**Division One, March 15, 1905.**

1. **TAX SUIT: Separate Interests.** Where the title to the land is divided into four separate interests, a judgment in a tax suit which purports to affect all of these interests, may be valid in so far as it affects one or more interests and invalid as to others.

2. **SUMMONS: Upon Corporation.** To whatever county a summons directed to a corporation may be sent, it can be served only on the president or other chief officer, or by leaving a copy thereof at a business office of the company with the person having charge thereof. It cannot be served on the secretary and treasurer in a county in which the company has no business office.

3. ——: ——: **Business Office: Affirmative Showing.** If the service directed to a domestic corporation is not on the president or other chief officer, it must affirmatively appear from the return that the person on whom the service was made was in charge of the business office of the company; otherwise, it is not sufficient.

4. ——: ——: ——: **Recitals in Return: Lost Files: Oral Testimony.** A recital in the judgment to the effect that the summons was legally served, may be contradicted by the files of the case; and if the files are lost their contents may be established by the oral testimony of witnesses who had read those files prior to their loss.

5. ——: **By Publication.** A notice of suit brought by publication in a newspaper must be in strict compliance with the requirements of the statute.

6. ——: ——: **To Unknown Heirs.** A notice by publication addressed to "the unknown heirs of Richard B. Lee, William W. Fleming, Robert F. Fleming and David D. Mitchell" names as "unknown heirs" only those of Richard B. Lee. The notice otherwise is to William W. Fleming, Robert F. Fleming and David D. Mitchell as if they were alive. And where the judgment and sheriff's deed follow the language of the notice, the purchaser does not obtain the title of the heirs of the deceased William W. Fleming, Robert F. Fleming and David D. Mitchell. (Per Valliant, J., with whom the other judges do not concur.)

Land & Mining Co. v. Land & Cattle Co.

7. ———: **In Supplement.** The law requiring notice of suit brought to be published in a newspaper, and a rigid compliance with that law being necessary, a publication in a supplement with no showing that the supplement was a newspaper, is not sufficient notice. (Per **Valliant, J.,** with whom the other judges do not concur.)

8. **PLEADING: Suit Against Unknown Heirs: Sufficient Pleading.** Under the statute which authorizes unknown parties to be brought in by the publication of a notice to them as unknown, it is necessary for the petition to describe the interest of such persons and how it was derived so far as known, or if not known to state that fact. A petition which describes the interests of the unknown parties only by saying they derived their interest as the heirs of certain deceased persons is not sufficient.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*W. J. Orr, James Orchard, A. H. Livingston* and *John C. Brown* for appellant.

(1) The court erred in excluding from the evidence the sheriff's tax deed to John C. Brown, comprising one link in plaintiff's chain of title, thus forcing plaintiff to take a nonsuit. Secs. 570, 580, 629, R. S. 1899; Cochran v. Thomas, 131 Mo. 258; Green v. Reserve Assn., 79 Mo. App. 179; McGrew v. Railroad, 87 Mo. App. 250; Draper v. Bryson, 17 Mo. 71; Land v. Shippie, 57 Mo. 523; Atwood v. Atwood, 55 Mo. App. 370; Nevault v. School, 79 Mo. App. 198; Boyd v. Ellis, 107 Mo. 394. (2) Defendants' objection to said tax deed is based on an alleged failure to publish the notice of sale for a sufficient length of time. They introduced some oral proof that the notice was published August 19, August 26, and September 2, 1897, and the sale took place September 15, 1897. This notice was published more than twenty days before the sale, and if the failure to continue the publication up to the day of

sale was a defect, such defect would not invalidate the sale unless the purchaser knew of the same. The testimony of witness John C. Brown was the only evidence on this point. He testified that before bidding off the land and receiving the tax deed in controversy he did not examine the notice of sale, nor the sheriff's execution docket, and had no knowledge of any defects in said notice of sale. The tax deed he received recites that the land had been duly advertised for twenty days prior to the sale. Under these circumstances if there were defects in the notice of sale or the publication thereof, they did not prevent Brown, who was an innocent purchaser, from obtaining a good title. Draper v. Bryson, 17 Mo. 71; Land v. Shippie, 57 Mo. 523. (3) If defendant had no business office in Jackson county, it could have proven that fact by the witnesses it placed on the stand, but it never attempted to do so. The solemn recital of a finding made by the court which had the return before it ought not to be disturbed upon the testimony of one witness who had not seen the papers for a year or more, who had made no copy or memorandum of the return, and whose evidence is not corroborated by the surrounding facts. Nevault v. School, 79 Mo. App. 198; Atwood v. Atwood, 55 Mo. App. 370. (4) The testimony of the witnesses for both plaintiff and defendants tended to show that there was an affidavit written on the petition below the signature of the tax attorney, which recited the interests of the unknown defendants. Whether or not the interests of such unknown defendants were set out in the body of the petition is a matter of some doubt, but appellant contends that this is a matter of little or no importance. The allegation in regard to unknown parties was contained in the affidavit as conceded by both parties, and the affidavit being a part of the petition, this was sufficient. That the tax attorney signed his name above this affidavit is of no consequence; if he had failed altogether to sign the petition, the defect was cured by the judg-

ment.  Cochran v. Thomas, 131 Mo. 258.  (5)  The defendants made a very unsuccessful attempt to create the impression that plaintiff's attorneys are responsible for the missing files in the tax suit.  The evidence most strongly indicates that those missing files were last seen in the hands of L. B. Shuck, attorney for defendants.  Defendants having failed to produce their copy of the lost petition, the presumption arises that it contains evidence which would injure them.  Bert v. Lewis, 88 Mo. 462.  (6)  If the tax deed in controversy covered the interest of any of the defendants in this action, it should not have been excluded from the evidence.  Boyd v. Ellis, 107 Mo. 394.

*A. & J. F. Lee, Robert F. Walker* and *P. L. Lyles* for respondents.

(1)  The notice of publication was defective as to the heirs of William W. Fleming, Robert F. Fleming and David D. Mitchell because these three persons were then dead and their heirs were not made parties to the suit, but only the unknown heirs of Richard B. Lee were made parties.  R. S. 1899, sec. 580.  (2)  The sheriff's deed to Brown was invalid and void as to all the defendants in the tax suit, because it did not describe the interests of those parties in the land sought to be sold in that suit; hence, it was very properly excluded.  R. S. 1899, sec. 580; Harness v. Craven, 126 Mo. 233; State ex rel. v. Staley, 76 Mo. 158.  (3)  The service upon the Current River Land & Cattle Company was void because the return of the sheriff did not show service on the "President or chief officer of the company," but only upon P. H. Ketchum, secretary and treasurer.  R. S. 1899, secs. 995, 996.  There was no testimony that Ketchum was the president or chief officer of the company or in charge of the company's office when served.

VALLIANT, J.—This is a suit under section 650, Revised Statutes 1899, to quiet title to certain land in Shannon county.

The plaintiff claims title through a sheriff's deed under execution on a special judgment for taxes. The defendants hold the title of the defendants in the tax suit. At the trial the plaintiff offered the sheriff's deed in evidence, but the defendants objected to it on the ground that the judgment on which it rested was invalid. The court, after hearing the evidence relating thereto, decided that the judgment was invalid and sustained the defendants' objection to the sheriff's deed; whereupon the plaintiff was driven to a nonsuit, and appealed from the judgment.

The vital question in the case is the one relating to the validity of the judgment in the tax suit, and that depends on the notice the defendants in that suit had.

The plaintiff introduced in evidence a patent from the United States, dated February 1, 1848, conveying the land to Robert B. Cowan; a deed from Cowan, dated January 19, 1875, conveying the same to Richard B. Lee, William W. Fleming, Robert F. Fleming and David D. Mitchell as tenants in common. It was admitted that the four grantees in the last-named deed were all dead prior to the institution of the tax suit, and that the individual defendants in this suit, together with T. B. Mitchell and Charles G. Mitchell, are their heirs. The plaintiff also introduced deeds showing that T. B. Mitchell and Charles G. Mitchell, as heirs at law to David D. Mitchell deceased, had prior to 1890 conveyed their interest in the land to the defendant the Current River Land & Cattle Company.

Then the plaintiff offered in evidence the sheriff's deed under the judgment in the tax suit. Defendants objected to the deed on the ground that the judgment on which it was based was invalid; the court heard evidence on that point and sustained the objection, and the nonsuit followed of necessity.

The defendants took the affirmative of that issue and introduced evidence as follows:

It was conceded that the files in the tax suit were lost, so that neither the petition, the summons, the proof of publication, the affidavit on which the order of publication was based, nor the notice of sale could be seen. The judgment as shown by the record was as follows:

"The State of Missouri, at the relation and to the use of F. M. Chilton, Collector of the Revenue of Shannon County, in the State of Missouri, Plaintiff, against Current River Land and Cattle Company, and the unknown heirs of Richard B. Lee, Wm. W. Fleming, Robert F. Fleming, David D. Mitchell, Allen McDaniel, M. W. Wetmore, Thomas Money, Wm. Warren, Robert B. Cowan, David Mathews, Defendants.

"Now on this day comes the plaintiff herein by attorneys, and the said defendants being three times solemnly called, come not, but make default, and it appearing to the satisfaction of the court, that said defendants have been duly and legally notified of this proceeding as follows, to-wit: Current River Land and Cattle Company, having been previously served at least fifteen days before the first day of the present term of this court and unknown heirs of Richard B. Lee, Wm. W. Fleming, David D. Mitchell, Allen McDaniel, M. W. Wetmore, Thomas Money, Wm. Warren, Robert B. Cowan, David Mathews, by advertisement in the Current Wave, a weekly newspaper published in Eminence, Shannon county, Missouri for four consecutive weeks, the last insertion being at least fifteen days before the first day of the present term of this court, and the said defendants having failed to appear and this action being wholly undefended, and on motion of the plaintiff this cause is submitted to the court, who, after hearing the testimony offered and being fully advised of the premises, doth find," and then the judgment

goes on to declare the State's lien for the taxes and decree a sale of the land to enforce the same.

The order of publication as shown by the record is as follows:

"In the circuit court of Shannon county, Missouri, in vacation, the State of Missouri at the relation and to the use of F. M. Chilton, collector of the revenue of Shannon county, Missouri, plaintiff, against Current River Land and Cattle Company and unknown heirs of Richard B. Lee, deceased, and unknown heirs of Wm. W. Fleming, deceased, unknown heirs of Robert F. Fleming, deceased, unknown heirs of David D. Mitchell, deceased, unknown heirs of Allen McDaniel, deceased, unknown heirs of M. W. Wetmore, deceased, unknown heirs of Thomas Money, deceased, unknown heirs of Wm. Warren, deceased, unknown heirs of Robert B. Cowan, deceased, and unknown heirs of David Mathews, deceased, defendants. Action to enforce State's lien for back taxes.

"Now, on this 22nd day of January, 1897, comes the plaintiff, F. M. Chilton, collector of the revenue of Shannon county, Missouri, by attorney, and files his petition, setting forth, among other things, under oath, that he verily believes there are other persons interested in the subject-matter of this petition, whose names he can not insert herein because they are unknown to him. They are interested as heirs at law of and derive their interest by inheritance from Richard B. Lee, deceased, Wm. W. Fleming, deceased, Robert F. Fleming, deceased, David D. Mitchell, deceased, Thomas Money, deceased, Wm. Warren, deceased, Robert B. Cowan, deceased, and David Mathews, deceased.

"It is therefore ordered by the clerk of the circuit court of Shannon county, Missouri, in vacation, that publication be made notifying said defendants, unknown heirs of Richard B. Lee, Wm. W. Fleming, Robert F. Fleming, David D. Mitchell, Allen McDaniel, M. W. Wetmore, Thomas Money, Wm. Warren, Robert B.

Cowan and David Mathews, deceased, that an action had been commenced against them in the circuit court of Shannon county, Missouri, the object and general nature of which is to enforce the lien of the State of Missouri for back taxes for the year 1895 on the following real estate, situated in Shannon county, Missouri, and belonging to said defendants, to-wit: Lots 1, 2 and 3, northwest quarter section 5, township 29, range 3 west, 240 acres.

"An itemized taxbill, showing the amount of taxes now due on said real estate for the year aforesaid, is filed with said petition, as provided by law, amounting in the aggregate to the sum of $6.94, and unless they be and appear at the next term of said court, to be holden for the county of Shannon and State of Missouri, at the courthouse in said county, on the second Monday in March next, it being the 8th day of March, 1897, and on or before the 3rd day thereof (if the term shall so long continue, and if not, then before the end of the term), and plead, answer or demur to said plaintiff's petition, the same will be taken as confessed, and judgment rendered, in accordance with the prayer of said petition, and said real estate, or so much thereof as may be necessary to satisfy said judgment, interest and costs, be sold under a special *fieri facias* to be issued thereon.

"It is further ordered that a copy hereof be published in the Current Wave, a weekly newspaper in Eminence, Shannon county, Missouri, for four weeks successively, the last insertion to be at least fifteen days before the commencement of said term of court."

The names of the defendants as they appear on the record in the caption of this order are written in a space over an erasure, showing that something previously written had been erased and their names inserted. Mr. Cunningham, clerk of the court, testified that the whole order was in the handwriting of the man who was the clerk at the date of the order.

The recitals in the sheriff's deed under the tax sale gave the style of the suit and the names of the parties as they are given in the tax judgment and purports to convey the land in question to John C. Brown, the highest bidder, for ten dollars.

Mr. Lyles, the proprietor of the newspaper in which the order of publication should have been published, testified that he had made diligent search through the files of the newspaper, but could not find the publication. He could only account for the non-appearance of it on the supposition that it had been printed in a supplement to his paper.

Mr. Shuck, a lawyer, testified that he had examined the files in the tax suit, with a view to seeing what they contained on these points in dispute, and that in the petition the only description of the individual defendants was "the unknown heirs of Richard B. Lee, Wm. W. Fleming, Robert F. Fleming and David D. Mitchell." He also stated that there was no recital or statement in the petition purporting to describe the interest of the alleged unknown parties, but that there was an affidavit of the collector attached to the end of the petition after the signature to this effect: "F. M. Chilton, collector, being duly sworn, upon his oath says that there are persons interested in the subject-matter of the above petition whose names he can not insert therein because they are unknown to him; that they derive their interest as heirs at law of Richard B. Lee, deceased, David D. Mitchell, deceased, and others, I do not remember all their names, all deceased."

Witness also testified that he had examined the return on the summons in reference to the Current River Land & Cattle Company, and that it was: "Executed the within writ in the county of Jackson, State of Missouri, by delivering to P. H. Ketchum, secretary and treasurer of the defendant, the Current River Land & Cattle Company, a copy of plaintiff's petition, together with a copy of the writ, as furnished by the clerk of

the circuit court of Shannon county; the president of said company not being found in the county and the company having no business office in said county of Jackson.'' He also testified that in the notice of publication the style of the case was: ''The State of Missouri at the relation of F. M. Chilton, collector of revenue of Shannon county, plaintiff, v. The Current River Land & Cattle Company, the unknown heirs of Richard B. Lee, William W. Fleming, Robert F. Fleming, David D. Mitchell'' and some others whose names the witness could not then remember, but that in the style of the case the words ''unknown heirs'' appeared only before the name of Richard B. Lee.

Mr. John F. Lee, lawyer, testified that in 1899 Mr. Munsell, the attorney who had conducted the tax suit for the collector, called at his office in St. Louis and brought with him the original files in the tax case, which appeared to be complete, for the purpose of having witness examine them and satisfy himself that they were regular and of requesting witness, when so satisfied, to advise the parties whom he represented to give quitclaim deeds to the property.

Mr. Lee's testimony was to the effect that after carefully examining the files he pointed out to Mr. Munsell certain defects in the proceedings and told him that the judgment was invalid, that Mr. Munsell seemed much disappointed and went away carrying the papers with him. The defects in the proceedings according to Mr. Lee's testimony were that neither in the petition in the tax suit nor the affidavit thereto were the interests of the alleged unknown heirs described; that the notice of the sheriff's sale was published August 19th and 26th, and September 2d, and the sale was on September 15th; that in the caption of the notice the defendants were described as ''The unknown heirs of Richard B. Lee, Wm. W. Fleming, Robert F. Fleming, David D. Mitchell,'' and some other parties whose names the witness could not remember; the words ''un-

known heirs'' were before the name Richard B. Lee only; that in the body of the petition it was stated that there were other persons interested whose names the relator could not insert because they were unknown to him, but that they derived their interests in the lands from Richard B. Lee, deceased, William W. Fleming, deceased, Robert F. Fleming, deceased, and David D. Mitchell, deceased; that to the petition was an affidavit of the relator ''that he verily believes there were persons interested in the subject-matter of this petition whose names he can not insert herein because they are unknown to him; that they are interested as heirs at law and derive their interests by inheritance from the parties whose names are given above;'' that there was no other description of the interests of the unknown persons named; this witness's recollection of the return as to the Current River Land & Cattle Company was the same as that of Mr. Shuck.

The sheriff's deed recites that the judgment was ''in favor of the State of Missouri to the use of F. M. Chilton, collector of revenue of Shannon county in the State of Missouri, and against Current River Land & Cattle Company and unknown heirs of Richard B. Lee, Wm. W. Fleming, Robert F. Fleming, David D. Mitchell, Allen McDaniel, M. W. Wetmore, Thomas Money, Wm. Warren, Robert B. Cowan, David Mathews for the sum of $7.51'' for delinquent taxes; and it also recites that the execution under which the sale was made was against the defendants by the same description.

There was some conflict between the testimony for the defendant and that for the plaintiff on the question of who had the papers in the case last. Mr. Shuck testified that he gave them to Mr. Brown, one of plaintiff's attorneys, but Mr. Brown said that Mr. Shuck was mistaken.

Mr. Brown was the purchaser at the tax sale and was a witness for the plaintiff. He testified that prior to his purchase, he did not examine the sheriff's execu-

tion docket or the sheriff's notice of sale and knew of no defects in the same. He remembered that when the question came up about the validity of his tax title he examined the files and found that the petition was in the usual form; that at the end of the petition was an affidavit by the collector stating the interest of the heirs of Lee and others in substance as Mr. Shuck and Mr. Lee stated; that the return of the sheriff on the summons for the Current River Land & Cattle Company was on one Ketchum, secretary and treasurer, but did not remember what else the return showed. After this litigation arose he examined the records; he noticed that in the style of the case in the order of publication there had been an erasure and the names of the parties defendants written over the erasure, but it was all in the handwriting of the then clerk and apparently in the same ink.

Robert B. Cowan acquired title by patent from the United States in 1848, and he conveyed it in 1875 to four grantees as tenants in common, Richard B. Lee, William W. Fleming, Robert F. Fleming and Daniel D. Mitchell. All four of these grantees had been dead many years before this tax suit was instituted in 1897. Prior to 1890 the Current River Land & Cattle Company had by deed duly recorded acquired the Mitchell interest, which was one-fourth, by deed from the heirs of Daniel D. Mitchell, deceased.

The foregoing is substantially all the evidence in the case.

The title to the land appears to be divided into four separate interests, each an undivided fourth, and the judgment in the tax suit purports to affect all of those interests. In has been held by this court that in such case the judgment may be valid in so far as it affects one or more interests and invalid as to others. [Williams v. Hudson, 93 Mo. 524; Boyd v. Ellis, 107 Mo. 394; Stevenson v. Black, 168 Mo. 549.] We will there-

fore examine this tax judgment in reference to each of these interests.

1.   The defendant, the Current River Land & Cattle Company, is described in the petition as a Missouri corporation, but the petition does not state in what county the corporation has its domicile.   The tax suit was begun in Shannon county where the land lies, the summons for this defendant was issued to the sheriff of Jackson county, and the judgment in the tax case recites that it was duly served.   But the defendants say that the recital is not true, and, since the files were lost, resort was had to oral evidence on that point.   Since it does not appear in the record that Jackson county was the domicile of the corporation, no reason appears for sending the summons for it to that county.   Section 995, Revised Statutes 1899, directs that:   "When any summons shall be issued against any incorporated company, service on the president or other chief officer of such company, or, in his absence, by leaving a copy thereof at any business office of said company with the person having charge thereof, shall be deemed a sufficient service; and if the corporation have no business office in the county where suit is brought, or if no person shall be found in charge thereof, and the president or chief officer can not be found in such county, a summons shall be issued, directed to the sheriff of any county in this State, where the president or chief officer of such company may reside or be found, or where any office or place of business may be kept of such company, and the service thereof shall be the same as above."

That statute authorizes the summons to issue to a county other than that in which the suit is brought only in case the corporation has no business office in the county in which the suit is brought, or if it have an office there and no person can be found in charge of such office or the president or other chief officer can not be found in the county, then when the writ is sent

to another county it can be served only on the president or other chief officer, or by leaving it at the business office of the company with a person having charge thereof. So that in whatsoever county the writ is served it must be either on the president or other chief officer or else at the business office of the company or the person in charge thereof.

According to the testimony of Mr. Shuck and Mr. Lee, both lawyers, whose professional attention was called to the subject and who examined the return to ascertain if it was sufficient, the only service was by leaving a copy of the writ and petition with the secretary and treasurer of the corporation in Jackson county, the president not being found in that county. This service was not made at the business office of the corporation on a person in charge thereof; on the contrary the return says the company had no business office in that county. The testimony of Mr. Brown, attorney for the plaintiff, was, as far as his recollection went, in corroboration of the testimony of the other two witnesses. He does not remember that in the return it was said that the corporation had no business office in the county, but that is really not material; before a return of service on one not the president or other chief officer can be held to be sufficient in the case of a domestic corporation it must affirmatively show that the person on whom the service was made was in the charge of the business office of the defendant.

Appellant contends that the recital in the tax judgment to the effect that the summons was served can not be overcome by the evidence of those witnesses. If the files in the case were accessible the return itself would be the best evidence, and by it the recital in the judgment could be contradicted, but when the files in the case are lost their contents can be proven by the next best evidence.

The trial court was satisfied from the evidence of

Vol 187 mo—28

these witnesses that the attempted service of this writ was by delivering a copy of it and of the petition to a person who was not the president or other chief officer and who was not in charge of the business office of the corporation and therefore it was not sufficient to bring the corporation into court, and we think the trial court was justified in that conclusion and therefore that the judgment by default against the corporation was invalid.

2. If the court acquired jurisdiction to dispose of the interest of the other defendants it was by virtue of the order of publication.

This order as it appears on the record of the court is directed to the unknown heirs of Richard B. Lee, the unknown heirs of William W. Fleming, the unknown heirs of Robert F. Fleming, and the unknown heirs of David D. Mitchell, and if the publication had been made in conformity to the order as it now appears on the record it would have been sufficient in the particular now being considered. But the evidence was satisfactory to the trial court showing that the order was not so published. The record itself is not very fair on its face; it shows in reference to the point now in dispute that it had been erased and written over, although in the handwriting of the then clerk. The record does not show the date to which that clerk's connection with the office extended. The fact of the erasure under the circumstances is not in itself sufficient to condemn the record, but it is a fact to be considered with other facts when the integrity of the record is in question. So the fact of the disappearance of the files, which were intact until after it was pointed out that they showed a state of facts which, in the opinion of lawyers professionally interested, impeached the validity of the judgment, is not sufficient in itself to impute the act to the plaintiff, yet the disappearance of the papers which afforded the best evidence on that point, in connection with the impaired face of the rec-

ord and the fact that it was to the plaintiff's interest (if the missing papers showed what those witnesses say they showed) that the record should be in the condition in which the trial court found it, are all circumstances to be considered in weighing the evidence. There is no evidence to show when this marred face was put upon the record, there is nothing to show that it was in that condition before Mr. Lee or Mr. Shuck examined the files and noted what they regarded as defects.

But even if the record of the order of publication were free from suspicion, it would not render the notice sufficient unless it was published as it appears on the record; the order of publication serves, as far as it can, the office of the summons; but though a summons be altogether correct in form it does not avail to bring the defendant into court unless it is served on him according to law. When the law is driven, from the necessity of the case, to authorize a judgment that will affect the property rights of an absent or unknown defendant, on a notice by mere publication in a newspaper, it demands of the plaintiff a strict compliance with the terms of the statute under which the publication purports to have been made. [Tooker v. Leake, 146 Mo. 419; Harness v. Cravens, 126 Mo. 233.]

The proof of publication in this instance was not to be found in the record; it disappeared with the rest of the papers in the case. The files of the newspaper in which it was alleged to have been published were resorted to, but no such publication could be found; the publisher testified that it might have been published in a supplement. But there was a proof of publication among the papers when Mr. Shuck examined them, and according to his testimony the notice was addressed to "the unknown heirs of Richard B. Lee, William W. Fleming, Robert F. Fleming and David D. Mitchell." The only unknown heirs there named are those of Richard B. Lee; the notice otherwise was to William W.

Fleming, Robert F. Fleming and David D. Mitchell as
if they were men alive, whereas the fact is admitted
that they had been dead many years.

The evidence of defendants on this point is cor-
roborated by the recitals in the sheriff's deed under
which the plaintiff claims. To meet the point made
by defendants that the sheriff's notice of sale was not
published for the period prescribed by law, the pur-
chaser at the sale was called as a witness for plaintiff
and testified that he did not examine the sheriff's exe-
cution docket or the notice of sale and was not aware
of the alleged defects in that particular, and it is con-
tended under the decisions in Draper v. Bryson, 17 Mo.
71, and Ladd v. Shippie, 57 Mo. 523, that he was an
innocent purchaser and not chargeable with notice of
the defect or affected by it. However that may be, he
was chargeable with notice of what the sheriff's deed
recited as the fact. That deed recited that the judg-
ment, for the satisfaction of which the sale was made,
was against the Current River Land & Cattle Company,
and the unknown heirs of Richard B. Lee, William M.
Fleming, Robert F. Fleming, David D. Mitchell, Allen
McDaniel, M. W. Wetmore'' and others, naming them,
and in that respect it followed the recitals in the judg-
ment. The words ''unknown heirs'' in the connection
used in the sheriff's deed and in the judgment have no
more relation to the Flemings and Mitchell than they
have to McDaniel, Wetmore and the others named, to
whom it is not claimed they relate. According to the
deed and the judgment the Flemings and Mitchell were
treated as living men and the judgment rendered
against them as such; neither the judgment nor the
deed purports to affect the interests of the heirs of
either of them.

The evidence also tends very forcibly to prove that
the order of publication was not published at all as
the law requires, because whilst the witness testified
that there was a proof of the publication, in the form

as they stated, among the files before they were lost, yet when the files of the newspaper in which the order was supposed to have been published were consulted they showed no such publication at all. If there had been such a publication the copies of the newspapers of the same dates would have shown it and they would have been the very best available evidence of the fact. The publisher testified that he could account for the non-appearance of the publication in the files of his newspaper only on the conjecture that it was published in a supplement—whatever that may be. But that does not fill the demand of the law. The statute requires the order to be published in a newspaper, it does not say that a supplement to a newspaper will do. We are not going to take judicial cognizance of what a supplement to a newspaper is; we only now say that when the evidence shows that the order was published, not in the newspaper, but in a supplement, and leaves the case at that point without showing what the supplement is we can not say that it was published as the law requires, and as the law in this respect requires a strict compliance with its terms in order to authorize a judgment by default against a person not served with process, we must hold that the notice was not sufficient. But in the case at bar, we have not even proof that the notice was published in a supplement, the proof only is that it was not published in the newspaper; the publisher merely conjectures that it might have been published in the supplement.

The evidence on this point impeaches the validity of the notice to the unknown heirs of Richard B. Lee as well as that to the other persons named.

3.    There is yet another point in the case. Section 580, which authorizes unknown parties to be brought in by the publication of a notice to them as unknown, requires the plaintiff to state in his petition that there are parties interested in the subject of the suit whose names he can not insert because he does not know them

and to describe the interest of such persons and say how it is derived so far as he knew. This requirement of the statute also is to be strictly construed. [State ex rel. v. Staley, 76 Mo. 158; Quigley v. Bank, 80 Mo. 289; Charles v. Morrow, 99 Mo. 638.]

There was no attempt to describe in the petition the interests of these unknown parties further than to say that they derive their interests as heirs at law of Richard B. Lee, deceased, David D. Mitchell, deceased, and other names the witness did not remember; there was no attempt to say what interest these unknown parties had, or that the plaintiff was unable to state it for the reason that he did not know it. We hold that as to the parties who derived their interests as heirs at law of Richard B. Lee and the others named there was not a sufficient description of their interests to constitute a compliance with the requirements of section 580, Revised Statutes 1899, and for that reason the interests of the unknown heirs of Richard B. Lee and of the other alleged unknown parties were not affected by the judgment in the tax suits.

The trial court took the correct view of the law in this case. The judgment is affirmed.

*Brace, C. J.,* and *Lamm, J.,* concur in paragraphs 1 and 3 and in the conclusion; *Marshall, J.,* not sitting.