## J. WILLIAM CHILTON v. LEANDER F. NICKEY, Appellant.

### Division Two, July 14, 1914.

1. **EVIDENCE: Patents to Land: Certification of Copies.** Copies of land patents certified by the Recorder of the General Land Office at Washington, are receivable in evidence.

2. **TAX SALE: Unknown Heirs.** The petition in a tax sale must describe the interests of the unknown heirs of a deceased owner, otherwise a sale under a judgment rendered thereon is void. After the death of the owner of the land, his heirs must be properly sued, served and allowed their day in court, else their title is not affected by judgment.

3. **SUIT TO QUIET TITLE: Legal Title: Adverse Possession: Issue of Law: Verdict.** Where in a suit to quiet title the plaintiff stood on his legal title and the defendant claimed under the thirty-year Statute of Limitations, a square issue of law resulted, and the verdict of the trial court on that issue is conclusive.

4. ————: ————: ————: **Preponderance of the Evidence.** One claiming under the thirty-year Statute of Limitations must establish his possession by a prepoderance of the evidence.

5. **LACHES: Not Defense to Claim Under Legal Title.** The doctrine of laches is only applied to defeat a claim for some equitable relief. It is no bar to a claim made under a legal title.

6. **SUIT TO QUIET TITLE: Ownership in Others than Parties.** Where the evidence in a suit to quiet title shows that a portion of the land in suit did not, when the suit was instituted, belong either to plaintiff or to defendant, there can be no adjudication as to that portion.

7. ————: **Taxes: Not Pleaded: Judgment.** Where defendant's answer made no claim for taxes paid on land bought at an invalid tax sale, but a certain sum was put in evidence, the Supreme Court will render judgment, in a suit to quiet title. which went against defendant, for an amount proportionate to the sum paid by defendant upon that part of the land adjudged to belong to the plaintiff.

Appeal from Butler Circuit Court.—*Hon. J. G. Sheppard,* Judge.

AFFIRMED (*as modified*).

*E. R. Lentz* for appellant.

(1) The proof in this case shows conclusively that neither plaintiff nor those under whom he claims have ever been in possession of the land in controversy or any part thereof, nor did the plaintiff or any one under whom he claims, pay any taxes on the land in controversy or any part thereof for more than thirty-five years next before the commencement of this suit. But on the other hand, the proof shows that the defendant, by his agent or tenant, has been in the actual possession of a part of the lands in controversy for more than one year next before the commencement of this suit, under claim and color of title to the whole. and exercising the usual acts of ownership over the whole of the said lands and paying the taxes thereon and by reason thereof plaintiff's right of action is forever barred. R. S. 1909, sec. 1882; Campbell v. Greer, 209 Mo. 215; DeHatre v. Edmonds, 200 Mo. 278; Crain v. Peterman, 200 Mo. 297. (2) The decree in the

case of Leander F. Nickey v. Henry C. Wright et al., rendered on the 23d day of April, 1906, and read in evidence in this case, constituted color of title on all the lands therein described, from the date of rendition and recording of said decree. And this is true even though the decree or judgment is, for any reason, irregular or even void. 1 Cyc. 1100-4; Jones v. Thomas, 124 Mo. 589; Brewing Co. v. Payne, 197 Mo. 428; Dunnington v. Hudson, 217 Mo. 100. (3) This plaintiff and those under whom he claims have been guilty of laches and are barred thereby from having or maintaining this action. Morrison v. Turnbaugh, 192 Mo. 447; Rutter v. Carothers, 223 Mo. 631; Shelton v. Horrell, 232 Mo. 358. (4) In this case it makes no difference whether the Henry C. Wright under whom plaintiff claims was the Henry C. Wright to whom these lands were conveyed, nor whether he was alive or dead at the time that these various tax suits were brought against him, or whether the judgments rendered in the tax suits were valid judgments or not, nor whether the decree in favor of Leander F. Nickey in the case of Nickey v. Wright, was a valid decree or not, they were nevertheless color of title and if these instruments showed that Nickey was the apparent owner of the title to all the lands in controversy, and was in possession of any part of the said lands, under claim or color of title, claiming the whole of the said lands, then defendant's right to action is barred as to all of the said lands. (5) If plaintiff, or those under whom he claims, have abandoned their claim of title to the lands in controversy or have been guilty of laches then plaintiff cannot recover in this case, no matter what title his immediate or remote grantors may have had, nor whether the defendant has been in the actual possession of the lands or not. (6) The copies of the patents from the United States to Henry C. Wright and to Alois Menne for the lands in controversy were improperly

admitted in evidence for the reason that they were not certified to by anybody as being correct copies and for the further reason that no proof had been made that original patents had ever been issued, or that if issued, the original patents had not been accounted for so as to admit as secondary evidence, the copies which were introduced.

*James Orchard* for respondent.

(1) "The copies of any patents, records, books, or papers in the general land office, authenticated by the seal and certified by the recorder of such office, shall be evidence equally with the originals thereof to the same force and effect as when certified by the commissioner of said office." Act of April 19, 1904, chap. 1396; 33 U. S. Stat. at Large, p. 189; 10 Federal Statutes Annotated, p. 354. It is the duty of the recorder of the general land office at Washington to certify all patents that may be issued from the office of the commissioner of the general land office. R. S. United States, sec. 459; 6 Fed. Stat. Ann. p. 217. An exemplification of a patent certified by the recorder of the general land office, may be introduced in evidence without proof of the loss of the original patent. Barton v. Murrain, 27 Mo. 235; Sec. 6293, R. S. 1909. (2) The finding by the trial court that respondent's grantors were the heirs, and sole heirs, of Henry C. Wright, deceased, is supported by the same presumptions as support a jury's finding in an action at law, and will not be disturbed by this court. Williams v. Sands, 158 S. W. 47. (3) Identity of name is prima-facie evidence of identity of person, from which the trial court was warranted in finding that Henry C. Wright, the ancestor of plaintiff's grantors was the same Henry C. Wright who owned the land in controversy, and that finding will not now be disturbed by this court. Gage v. Cantwell, 191 Mo. 698; Gitt v.

Watson, 18 Mo. 274; Flourney v. Warden, 17 Mo. 435; State v. Moore, 61 Mo. 276; State v. McGuire, 81 Mo. 642; Williams v. Sands, 158 S. W. 47. (4) A tax suit brought against a man who was dead at the time, though shown by the deed records to have been the owner of the land, is void, and does not affect the title of his heirs, to the land. Williams v. Hudson, 93 Mo. 524; Stafford v. Fizer, 82 Mo. 393; Adams v. Gassom, 228 Mo. 566. (5) A tax suit brought against the heirs of a deceased owner of real estate as "unknown persons," is void if the petition and order of publication therein do not describe the interest of such unknown persons in the land. Land & Mining Co. v. Land & Cattle Co., 187 Mo. 420; Davis v. Montgomery, 205 Mo. 271; Huiskamp v. Miller, 220 Mo. 135; Betts v. Staley, 76 Mo. 158. (6) Acts of ownership and authority exercised over land by a claimant thereof, such as cutting timber, surveying the land, keeping other trespassers off, and even paying taxes thereon, do not constitute actual possession, within the meaning of the law of limitations. Pharis v. Jones, 122 Mo. 125; Nye v. McAlfter, 127 Mo. 529; Himmelberger-Harrison Lbr. Co. v. McCabe, 220 Mo. 154; Chilton v. Comanianni, 221 Mo. 685; Weir v. Cordz-Fisher Lbr. Co., 186 Mo. 397; Carter v. Hornback, 139 Mo. 244; Morgan v. Pott, 124 Mo. App. 371. (7) Actual adverse possession of land, in order to ripen into title must be continuous for the legal limitation period invoked. Possession cannot be tacked as between a prior and subsequent occupier of land, unless there was colorable transfer of the first possessor's claim to the last. Maysville v. Truex, 235 Mo. 619; Crispen v. Hannavan et al., 50 Mo. 549; Adkins v. Tomlinson, 121 Mo. 493. And there is no difference in the character of the possession of a claimant required to sustain the thirty-year Statute of Limitation, and that which will sustain the ten-year Statute of Limitation. The only difference is the time the occu-

pant must have held the land in such adverse posses-
sion. Chilton v. Comanianni, 221 Mo. 685. (8) The
finding as a fact by the court sitting as a jury, upon
the evidence adduced, that appellant had not had such
actual possession of the land in controversy as would
support his plea of the thirty-year Statute of Limita-
tion, is conclusive of that fact, and will not be dis-
turbed by this court. Nickey v. Leader, 235 Mo. 30;
Williams v. Sands, 158 S. W. 49; Daman v. Remme,
246 Mo. 233; Griggs v. Bridgewater, 167 Mo. App.
342; Blair v. Blair, 247 Mo. 61; Renting & Investment
Co. v. Bernardon, 152 S. W. 1105. (9) Failure of
the owner of land to take possession thereof, or to
sue to quiet the title thereto, and even the non-
payment of taxes thereon—for any length of time
whatsoever, are acts which do not of themselves bar
or estop such owner from asserting title at any time
or in any manner that may suit him. Haarstick v.
Gabriel, 200 Mo. 237; Burkham v. Manewall, 195 Mo.
500; Manwarring v. Lbr. & Mining Co., 200 Mo. 718;
Wear v. Cordz-Fisher Lbr. Co., 186 Mo. 388; Hays
v. Pumphrey, 226 Mo. 119; Brewster v. Land & Imp.
Co., 247 Mo. 209. (10) The testimony of respond-
ent's grantor, P. M. Wright, does not sustain the
contention of appellant that respondent's grantors
had abandoned the land and did not claim to own it
at the time they sold it to respondent. But even if
said testimony would bear out such inference, it could
not affect the title of respondent so acquired, because
it is not permissible for a party to impeach the title
he sells by statements and declarations made after
such sale. Benevolent Society v. Murray, 145 Mo.
623; Garrit v. Wiltse, 161 S. W. 694; Marshall et al.
v. Hill, 246 Mo. 1.

ROY, C.—Suit to quiet title in which judg-
ment was for plaintiff. The land is the northeast

Chilton v. Nickey.

<span style="margin">Suit to Quiet Title.</span> quarter, and the west half of the southeast quarter, of section ʼone; also the southeast quarter and lot one of the northeast quarter of section two, all in township twenty-three, range four east. It is wild timber land with no improvements, as hereinafter stated.

The answer contained a general denial, except that it admitted a claim of ownership by defendant, and pleaded the thirty-year Statute of Limitations as to that part of the land in section one.

The plaintiff read in evidence a copy of a patent issued to Henry C. Wright of Warren county, Missouri, for that part of the land in section one, dated September 1, 1859, and a copy of a patent to Alois Menne, for the lands in section two. Each of these instruments was certified as follows:

"Department of the Interior, General Land Office, Washington, D. C., Oct. 12, 1910.—I hereby certify that the annexed copies of patents are true and literal exemplifications from the records in this office. In testimony whereof, I have hereunto subscribed my name and caused the seal of this office to be affixed, at the city of Washington, on the day and year above written.

(Seal)

"H. W. LANYARD, Recorder of General Land Office."

To these copies of the patents the defendant objected for the reason that they were not authenticated as required by the Act of Congress or in any other manner. The objection was overruled and defendant excepted.

Plaintiff read in evidence a warranty deed from Alois Menne to Nicholas P. Stephenson for the land in section two, dated December 15, 1857, and recorded December 15, 1868; also a warranty deed from said Stephenson to Henry C. Wright for the same land, dated May 29, 1858, and recorded June 14, 1860.

Wright died May 15, 1880, and left surviving him three children and the descendants of two deceased children. The plaintiff acquired the interests of all the heirs except those of Mrs. Robert Williams, Mrs. DeMuth, Alton Easton and W. R. Easton, the descendants of a deceased daughter of Wright, said interest being one-fifth of the land. P. M. Wright, a son of Henry C. Wright, testified for plaintiff, and on cross-examination said that he did not know where his father's deeds to the land were; that the taxes had not been paid by his father or his heirs since 1875, that the heirs got $100 from Mr. Chilton for the land, and that he was satisfied with that price because he knew it had been sold several times for taxes, and that it would necessitate trouble and expense to recover it.

As to the defendant's title, it is sufficient to say that at various times from 1883 to 1903 different portions of the land were sold for taxes in suits against Henry C. Wright and during that time all the land was so sold for taxes, some portions of it being sold several times. The east half of the northeast quarter and the northwest quarter of the northeast quarter of section one was sold for taxes on October 21, 1903. Defendant read in evidence a sheriff's deed under a judgment for taxes against Henry C. Wright, the unknown heirs of Henry C. Wright, deceased, the unknown devisees of Henry C. Wright, deceased, and others, to the defendant herein. The deed was dated April 13, 1907.

The plaintiff, in rebuttal, read in evidence the petition in the tax suit last mentioned. It did not describe the interests of the unknown heirs of Henry C. Wright in the land and did not allege that the interests of such unknown heirs in the land were unknown to the plaintiff.

The defendant after January 1, 1900, and prior to 1906, acquired the title of all the purchasers at the

various tax sales. On April 23, 1906, a decree was rendered in the circuit court of Butler county in the case of Leander F. Nickey v. Henry C. Wright, Joseph Gardner, H. B. Powers and others, quieting the title to the land in said Nickey. The heirs of Henry C. Wright were not parties to that suit, nor was the plaintiff.

There have never been any improvements on the land·in section two. In April, 1906, the defendant sold the tie timber on the land in section two under the agreement that the purchasers were to remove the timber within two years. The purchasers during the time limited cut and removed the tie timber. The defendant testified that about six years before the trial he turned all the land over to Joseph Gardner, who agreed to take care of it for defendant for the use of the house then on the place, and the tillable land. There was a small box house on the northeast corner of section one, near which there was about an acre of ground that had been cultivated at some time not shown in the evidence. When the house was built is not shown. Defendant testified that he had the land in section two surveyed and that he cut brush off the land in order to keep timber thieves away. He sold an acre from the tract for a schoolhouse.

The defendant in his testimony disclaimed personal knowledge of other acts of ownership on the land except that he had put Gardner in charge of it. Gardner testified that he had been in possession of the land since the defendant put it in his charge. When asked about his acts of ownership, he said:

"Q. Well, just tell how you got possession of it? A. I asked permission of Mr. Nickey to have possession of the place for the simple reason I would know who lived there, then if I had control of it— and he told me to go ahead and use it as my own, or something to that effect; he said go ahead and take care of it and keep the rails from getting burned and

keep the fellows from cutting the timber off the land. I know something was said about timber, and I have had possession of it since that—and didn't you ask me in what way I have used it?

"Q. Yes, sir. A. Well, I had a family living in there once.

"Q. How long? A. I believe, maybe twice; I gave my consent once for a family to move in there, and another time I had a family living in there for my own benefit, that was working for me.

"Q. Go on. A. And that has been two years ago since the last family lived in the house. Since that time I used the house to put hay in in the winter—the fall of the year I feed my cattle around the house, in the winter time. In the summer time it makes the finest kind of a shophouse.

"Q. Is there any of the land that is inclosed by fence? A. Why, I have three barbed wires running across there, the neighbors out there don't call it much fence.

"Q. Well, does it inclose any land? A. Yes, sir, it incloses a part of this tract. It incloses the house and, just an off-hand guess, I would say ten acres of the land."

He further testified that the first man who lived in the house with his permission was Thomas Powers, who occupied it a month, and that the other was Mento Murphy, who lived there about six months; that he put the wire fence there early in the spring before the trial. There had previously been a rail fence around the house and enclosing about ten acres of the land, but it had been partly burned and was not used. The house and rail fence had been constructed prior to the acquisition of any title by the defendant, and the house was not occupied at the time defendant put Gardner in charge. The defendant put in evidence receipts for taxes paid on the east half of the

261Mo16

northeast quarter and the northwest quarter of the northeast quarter of section one, amounting with interest to $39.73. The answer made no claim on account of taxes paid by defendant.

I. Defendant's objection to the copies of the patents as evidence was not well taken. Those copies

**Copies of Land Patents: Certification.** were certified by the recorder of the general land office at Washington, D. C. The use of such copies so certified is provided for by 33 U. S. Statutes at Large, p. 189, and by section 6293, Revised Statutes 1909.

II. The only tax suit in which any attempt was made to proceed against the heirs of Henry C. Wright

**Tax Sale: Unknown Heirs.** was the one under which a sale was made in 1907 for a portion of the land. The petition in that case did not describe the interests of the unknown heirs of Henry C. Wright in the land, and, for that reason, the sale thereunder was void. [Davis v. Montgomery, 205 Mo. 271; Land & Mining Co. v. Land & Cattle Co., 187 Mo. 420.] After the death of the owner of the land, his heirs must be properly sued, served and allowed their day in court. Otherwise the proceedings are void. [Adams v. Gossom, 228 Mo. l. c. 577.] It results that all the tax sales were void.

III. In Morrison v. Bomer, 195 Mo. 535, it was held that one claiming by adverse possession for ten

**Legal Title: Adverse Possession: Issue of Law: Verdict.** years must show such adverse possession by a preponderance of the evidence. It was also held in that case that the question of adverse possession was one for the triers of fact, and there being evidence on which to base the finding, it was conclusive on the parties. The same rule as to a preponderance of the evidence applies in this case. The plaintiff stood on

the legal title; the defendant claimed by the thirty-one-year Statute of Limitations. It was a square issue at law, and the verdict of the trial court is con-conclusive.

A close examination of the evidence shows that the proof for the defendant as to his possession for one year before suit brought, even if its truth be conceded, is subject to more than one construction. The trial court could have refused to believe defendant's evidence, or, taking it as true, it may have found that it did not show continuous actual possession for a year by the defendant.

**Preponderance of the Evidence.**

IV. Appellant insists that the plaintiff is barred by laches. The doctrine of laches is only applied to defeat a claim for some equitable relief. It is no bar to a claim made under a legal title. It was expressly so held in Hayes v. Schall, 229 Mo. l. c. 124. In no case in this State has it been held that laches is a bar to a claim made under a legal right as distinguished from an equitable claim or title.

**Laches.**

V. It clearly appears from the evidence that one-fifth of the land at the date of the institution of this suit did not belong to either the plaintiff or the defendant, but to the heirs of the deceased daughter of Henry C. Wright, named in the foregoing statement. The judgment of the trial court is hereby modified so as to adjudge and decree in the plaintiff the undivided four-fifths of the land, and no adjudication as to the other fifth is made.

**Ownership not in Parties.**

VI. In accordance with the precedent set for us in Mangold v. Bacon, 249 Mo. l. c. 50, we modify the judgment of the trial court by rendering judgment

**Taxes: Not Pleaded.** here in favor of the defendant for four-fifths of the taxes and interest on that portion of the land sold for taxes in 1903, to-wit: The sum of $31.78, and the same is declared a first lien on plaintiff's interest in the east half of the northeast quarter, and the northwest fourth of the northeast quarter of said section one.

The judgment as thus modified is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of ROY, C., is adopted as the opinion of the court. *Walker, P. J.,* and *Brown, J.,* concur. *Faris, J.,* concurs in result.